## THE MERCHANTS' NATIONAL BANK

### *v.*

### GEORGE W. LYON *et al.*

*Opinion filed April 17, 1900.*

1. EVIDENCE—*degree of proof necessary to overcome sworn answer.* When the complainant requires an answer under oath, such answer can only be overcome by the evidence of two witnesses or by the testimony of one and circumstances equal to that of another.

2. SAME—*one alleging fraud has the burden of proof.* Complainant in a creditor's bill proceeding, who charges fraud in the conveyance of the debtor's property, has the burden of establishing such fraud by a preponderance of the evidence.

3. DEBTOR AND CREDITOR—*debtor is entitled to make a bona fide preference in favor of relative.* A son who is heavily indebted to his father may prefer the latter by conveying property to him in satisfaction of the debt, the fact of the relationship being merely a circumstance to excite suspicion, but not, of itself, proof of fraud.

4. SAME—*what facts tend to show that conveyance was bona fide.* That the value of property conveyed by a son to his father was less than the amount of his *bona fide* indebtedness to the father, that the latter carried out his part of the agreement by paying notes upon which he was security for the son, and that the property conveyed was subject to mortgages which the father assumed, are circumstances tending to show good faith in the transaction.

*Lyon* v. *Merchants' Nat. Bank*, 82 Ill. App. 598, affirmed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. T. M. SHAW, Judge, presiding.

This was a creditor's bill filed by the Merchants' National Bank of Peoria on April 22, 1892, in the circuit court of Peoria county, asking for discovery and relief against George W. Lyon, Aaron Lyon, (now deceased,) Weston Arnold and Theodore Miller. The bill was based upon a judgment recovered on October 21, 1891, against George W. Lyon for the sum of $3438.65, upon certain

notes given the bank by him as renewals of prior notes of J. S. Ely & Co., of which firm he had been a member.

The bill charges that in November, 1889, George W. Lyon was the owner of certain lots and undivided interests in lands and lots in the city of Peoria, which are particularly described in the bill, but which property is for convenience known and referred to in the record as (1) the Jefferson Park subdivision; (2) the Peoria Fair subdivision; (3) the Highland Park addition; (4) the Lincoln Place subdivision; (5) the Selby Park subdivision; (6) the Washington street property; and (7) the homestead property, in Monson & Sanford's addition.

The bill alleged that in November, 1889, George W. Lyon, being largely indebted to complainant and others, in order to defeat his creditors executed a number of deeds, by which he transferred all the above real estate, —some of it to his father, Aaron Lyon, and the rest to his brother-in-law, Weston Arnold; that said deeds were fraudulent, for the purpose of hindering and delaying creditors, and without consideration; that the property was still held in trust for George W. Lyon, etc. The bill propounded to each defendant many specific interrogatories, called for an answer under oath, and asked a decree setting aside said deeds and subjecting the premises to the payment of complainant's execution. Each defendant filed a sworn answer, specifically answering the interrogatories, giving detailed statements of the deeds and the considerations therefor, and wholly denying the allegations of fraud, and denying that George W. Lyon had any further interest in the lands conveyed to Aaron Lyon and that they were held in trust for him. Complainant filed replications, and the cause was referred to a master to take and report the proofs with his conclusions. Evidence was taken before the master in 1893 and 1896, and in June, 1897, the master made a report holding all the conveyances fraudulent. Objections to the report were filed before the master, which he overruled.

He then filed his report in court, and defendants filed exceptions thereto.

The case was heard upon the bill, answers, replications and proofs, the report of the master and the exceptions, and upon the hearing the court sustained the defendants' exceptions, and found by its decree that George W. Lyon, on and prior to the 29th day of December, 1889, was justly indebted to the German-American National Bank of Peoria to the extent of $15,000, as set forth in the answer of Weston Arnold, and that to secure said indebtedness he executed and delivered to the said Arnold a warranty deed to the lots in Jefferson Park and fair association subdivisions, and found no fraud in said conveyance; that there was no equity in the bill so far as it attacks the validity of the conveyance to Arnold; and sustained the exceptions to that portion of the master's report and dismissed the bill so far as it related to said conveyance. The court also found that the conveyance of the Washington street property by Aaron Lyon to A. V. Thomas was fraudulent as to complainant, but that said Thomas was a *bona fide* purchaser of said property and unaffected by said fraud, and that complainant was entitled to no equity as against that property. As to the conveyances from George W. Lyon to Weston Arnold, and by Arnold to Aaron Lyon, of the undivided half of certain lots in Highland Park, and the conveyances from George W. Lyon to Aaron Lyon of the Lincoln Place, Selby Park and homestead properties, the court found they were made for the purpose of hindering and delaying the creditors of George W. Lyon, and were as to such creditors fraudulent and void, and overruled the exceptions to the master's report as to them, and adjudged and decreed the same to be subject to the lien of complainant's judgment, and that complainant was entitled to have the same sold on execution for the satisfaction of its judgment as though the legal title existed in George W. Lyon.

The case was appealed by George W. Lyon and Aaron Lyon to the Appellate Court for the Second District, which reversed the judgment of the circuit court and remanded the cause, with directions to dismiss the bill of complaint. Aaron Lyon died during the pendency of the suit in the Appellate Court, and an order was made, dated May 31, 1899, denying an appeal, and entering judgment *nunc pro tunc* as of January 3, 1899, on account of the death of Aaron Lyon, one of the defendants. A writ of error was sued out of this court by the Merchants' National Bank, the complainant in the original bill, making the heirs and executor of Aaron Lyon parties.

JACK & TICHENOR, for plaintiff in error:

In case of a conveyance by an insolvent debtor, if a near relationship exists between the grantor or grantee more vigilant and jealous scrutiny will be excited and clearer and more convincing proof required than when the transaction is between strangers. *Martin* v. *Duncan,* 156 Ill. 274.

When defendants, being relatives, are apprised by a bill in equity that a deed executed by them is to be impeached, it is incumbent upon them to contradict and explain every fact tending to throw suspicion upon it. *Alexander* v. *Todd,* 1 Bond, (U. S. C. C.) 175.

When the consideration is impeached and there are other circumstances attending the transaction throwing suspicion upon its good faith, the evidence of payment being in the possession of the parties to the contract, they should produce it. *Callan* v. *Stratham,* 23 How. 477.

A secret trust between the parties is a badge of fraud. Where a secret trust and confidence exist for the grantor's benefit the sale is void, both as to precedent and subsequent debtors. *Gordon* v. *Reynolds,* 114 Ill. 118; *Jones* v. *King,* 86 id. 225; *Bostwick* v. *Blake,* 145 id. 85.

Where a number of transfers are made at the same time, constituting, in all, the entire property of the debtor,

it matters not that a valuable and an adequate consideration may have been received by the debtor for some of the gifts; if, still, the general effect is to delay creditors, the transaction may be annulled by them. 2 Bigelow on Fraud, 483; *Switz* v. *Bruce,* 16 Neb. 463; *Nickerson* v. *English,* 142 Mass. 267.

GEORGE B. FOSTER, for defendants in error:

The defendants having answered under oath, as required by the bill, the same must be taken as true, unless overcome by the testimony of two witnesses or what is equivalent thereto. *Catlett* v. *Dougherty,* 114 Ill. 568; *Mey* v. *Gulliman,* 105 id. 273.

To render a sale or conveyance fraudulent as to creditors of the vendor there must be mutuality or participation in the fraudulent intent on the part of both the vendor and the purchaser; and where the party proves a purchase of property which appears on its face to be free from fraud and shows the payment of a fair and adequate consideration, he makes a *prima facie* case, and it is incumbent on the part of the one attacking the same for fraud as to creditors, to establish the fraud by a preponderance of the evidence. *Schroeder* v. *Walsh,* 120 Ill. 403.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The Merchants' National Bank, the complainant in the original bill and the appellee in the Appellate Court, assigned no cross-errors in that court to the findings of the trial court that there was no equity in the bill so far as it attacked the validity of the conveyance by George W. Lyon to Weston Arnold of the property known as Jefferson Park and the lots referred to as being in Peoria fair subdivision, thus sustaining the exceptions to the master's report and dismissing the bill so far as it related to said conveyance. Neither were cross-errors assigned as to the finding of the court that A. V. Thomas was a *bona fide* purchaser of the Washington street property

and complainant was entitled to no equity against said property, hence that portion of the decree must be understood to be acquiesced in and is not before this court for review.

Did the Appellate Court err in reversing the decree of the circuit court and directing that court to dismiss the bill? The only question to be determined is whether the conveyances from George W. Lyon to Aaron Lyon for the Lincoln Place, Selby Park and homestead properties were fraudulent as to the creditors of George W. Lyon and were without consideration.

The evidence shows that George W. Lyon dealt quite extensively in real estate in Peoria and also was engaged in other business enterprises. He was a single man, and resided with his father, Aaron Lyon. Aaron Lyon was a man eighty years of age when he testified in the case. He had had a vigorous mind until his wife died, about ten years before, since which time his memory had not been good. He was regarded as a man of means, having inherited, in 1880, $40,000 from John B. Lyon, of Boston. He was able to collect some rents, but for the past fifteen or twenty years George W. Lyon had bought and sold and leased property for him and assisted him in loaning money. For several years, at different times, Aaron Lyon had loaned George W. Lyon money when he required it in his real estate business, and had taken the latter's notes, and Aaron Lyon had also become security for George W. Lyon on notes at banks and in some of his business transactions. It also appears in evidence that a settlement was had between Aaron Lyon and George W. Lyon in November, 1889, and it was found that George W. Lyon was indebted to Aaron Lyon, for money borrowed and upon notes upon which his father was security, in the sum of about $22,000, independently of a judgment in favor of W. L. Pierce & Co. against George W. Lyon for $2153, which was a lien upon the homestead, and also for a mortgage upon the homestead for $2380. It was

then agreed that George W. Lyon should convey the real estate in question to his father, said Aaron Lyon, the net value of which was estimated to be about $12,000, which was to be accepted by Aaron Lyon in full settlement of all notes and indebtedness then held by Aaron Lyon against George W. Lyon, and Aaron Lyon agreed to pay and satisfy all notes upon which Aaron Lyon was security for George W. Lyon, and Aaron Lyon agreed to pay the W. L. Pierce & Co. judgment, and he was also to pay the mortgage on the homestead. · The conveyances were made and executed by George W. Lyon to Aaron Lyon, and Aaron Lyon surrendered to his son the notes held, and assumed the payment of the notes upon which he was security.

George W. and Aaron Lyon filed sworn answers denying that the conveyances from George W. to Aaron Lyon were fraudulent or designed to cover up the lands or lots, or the title thereto, to prevent complainant from recovering the amount of its said judgment, and denied that George W. Lyon fraudulently retained equitable interests and trusts therein that should be subjected to complainant's judgment. Theodore Miller and Weston Arnold also filed answers under oath.

The answer of George W. Lyon admits that November 29, 1889, he conveyed, by warranty deed, to his father, Aaron Lyon, certain lots in Lincoln Place subdivision, the consideration being placed in the deed at $5000, but avers that the actual consideration for the deed was that Aaron Lyon agreed that a certain indebtedness which the defendant then owed on a note held by the German-American National Bank of Peoria for the sum of $4600 and interest should be paid by Aaron Lyon from the proceeds of eight certain consolidated bonds of the Boston, Concord and Montreal Railroad Company, each for the face value of $1000, which had been pledged for the payment of said indebtedness by George W. Lyon, who had borrowed the bonds from his father, Aaron Lyon, the

owner of the same; and also that Aaron Lyon would cancel a certain indebtedness which he held against George, amounting to $800 or $900, and that Aaron Lyon afterward, in March, 1890, paid and discharged the indebtedness to the bank from and out of the proceeds of the sale of the bonds, to the amount of $4836.14, and took up and canceled the note. The answer denies that the real estate described in the deed of November 29, 1889, is under the absolute control of George W. Lyon, but avers that whatever control he had over the property or any property of Aaron Lyon since the date of said conveyance or conveyances has been as the agent, only, of his father and with his father's consent and direction, his father being a man of the age of eighty years and not sufficiently vigorous to conduct his own business, and that he relied on him, George W. Lyon, in caring for and managing his (Aaron Lyon's) property; admits that on the 9th day of November, 1889, he conveyed to his father, Aaron Lyon, for the express consideration of $2000, the tract of land described as the Selby Park property; that the same still stands in the name of Aaron Lyon, but denies the same is subject to the control of defendant, or is held in trust by Aaron Lyon for the use and benefit of defendant, but avers that the actual consideration for the conveyance, and certain other conveyances of the same date, and of certain real estate on Washington street, in the city of Peoria, was the payment and satisfaction by Aaron Lyon of two certain promissory notes which Aaron Lyon held against defendant, and which amounted, principal and interest, at the time to the sum of $7551.13, and that the deed was subject to a mortgage of $8000 on the property conveyed; admits that the title to lot 3, in block 92, in Monson & Sanford's addition to Peoria, (the homestead,) remained in defendant George W. Lyon until about the third day of October, 1891, when the defendant, for an expressed consideration of one dollar, (no money in fact being paid,) conveyed the same to his father, Aaron Lyon;

avers the fact to be that in February, 1891, Aaron Lyon
purchased and had assigned to him a certain judgment
obtained in the circuit court of Peoria county in favor of
W. L. Pierce & Co. against the defendant for $2153 and
costs, which was a lien upon any real estate defendant
had at that time, and that he conveyed the homestead
property subject to a mortgage upon the same amounting
to about $2200; avers the property was not worth to ex-
ceed $2600, and that Aaron Lyon assumed the mortgage
encumbrance and agreed to pay the same; denies that
the conveyances, or any of them, were fraudulent or de-
signed to fraudulently cover up the same so as to prevent
complainant from recovering the amount of its judgment.

The answer of Aaron Lyon was under oath, and cor-
roborates substantially the statements and averments of
the answer of George W. Lyon.   He answers the special
interrogatories and gives detailed statements of the deeds
and the considerations therefor.   He says that the con-
sideration for the Selby Park and the Washington street
property conveyances, dated November 9, 1889, was the
surrender to George W. Lyon of two promissory notes
which he (Aaron) held against him,—one dated January 5,
1884, for the sum of $1600, and interest thereon at eight
per cent, and the other dated January 20, 1889, for $4983,
and interest thereon at eight per cent per annum, both
amounting, principal and interest, to $7551.13; that these
notes were surrendered up and canceled.

These conveyances appear to have been accepted by
Aaron Lyon as absolute, and there is nothing indicating
to us that any secret trust existed.   The sworn answers
of both George W. and Aaron Lyon deny that George W.
Lyon retains any equitable interests and trusts in the
lands and premises, or that said conveyances were de-
signed to cover up the same to prevent the complainant
from recovering the amount of its judgment.   When the
complainant requires the answer of a defendant under
oath, and he so answers, it can only be overcome by the

evidence of two witnesses, or by the evidence of one and circumstances equal in weight to that of another. (*Myers* v. *Kinzie*, 26 Ill. 36; *Phelps* v. *White*, 18 id. 41.) Have the sworn answers of George W. Lyon and Aaron Lyon been overcome by the evidence of two witnesses, or that of one and circumstances equal to that of another? A careful examination of complainant's evidence fails to show that the conveyances to Aaron Lyon were fraudulent or without consideration, and the sworn answers are not overcome.

The testimony shows that Aaron Lyon was security for his son on several notes at the German National Bank, and paid one note of $4600 from the proceeds of bonds loaned to George and which were held as collateral by the bank. The fact that the notes that Aaron Lyon stated, in his answer, he surrendered up were not produced at the trial is regarded as a suspicious circumstance by complainant's counsel. The attorney who drew the answers of George W. Lyon and Aaron Lyon, testifies that he had the notes before him when he drew the answers, and they were described in the same. George W. Lyon swears that he had them until he took them to his attorney to use in preparing the answers, and that he afterwards took them home and laid them on a dresser; that the housekeeper threw some papers out on the ash pile in the rear of the house, and she told him they had blown on the floor and she threw them out there, and he went and hunted, and found a receipt that had been given him about the same time, but found no other papers.

The sworn answers not being overcome by the testimony of complainant, it must be held that Aaron Lyon was a purchaser for value and entitled to hold the property conveyed to him by George W. Lyon. The fact that George W. Lyon and Aaron Lyon were related does not prove fraud. As was said in *Wightman* v. *Hart*, 37 Ill. 123: "Nor does the fact that Albert and Charles were relatives prove fraud. It may be a circumstance to excite suspi-

cion, but of itself is not proof. Nor do we think, in con-
nection with other circumstances, that it overcomes the
sworn answer responsive to the allegations of the bill."

The surrender and cancellation of these notes and an
account of $890 were a good consideration for the deeds.
Besides, Aaron Lyon, who was security on notes with
George W. Lyon, was jointly liable thereon, and he agreed
to and did assume and treat them as his own, which was
a good consideration. Every tract of land deeded was
encumbered by mortgage, and the deeds from George W.
Lyon to Aaron Lyon were made subject to these mort-
gages. The value of the property deeded Aaron Lyon,
the evidence shows, was about $11,000, and the indebt-
edness due from George W. Lyon to his father was up-
wards of $13,000, so that it appears Aaron Lyon actually
paid more than the property was worth at the time the
conveyances were made.

George W. Lyon had a right to prefer Aaron Lyon.
He had a right to turn out property in satisfaction of or
to create a lien upon it for the security of a particular
debt. In *Farwell* v. *Nilsson*, 133 Ill. 45, this court said
(p. 48): "The right of a debtor to pay one creditor in pref-
erence to another, or to turn out property in satisfaction
of or to create a lien upon it for the security of a particu-
lar debt, in preference to and to the exclusion of other
liabilities, always existed at common law."

Complainant made Aaron Lyon its own witness and
is bound by his testimony. He testified:

Q. "Was there any property of any kind included in
any of the deeds from George to you that was not abso-
lutely sold by him to you in payment of his indebtedness
to you?

A. "That was the understanding.

Q. "Was not that the fact?

A. "Yes, sir. As near as I can come at it from the old
stubs, George W. Lyon was owing me in November, 1889,
at the time of the settlement, about $17,000 or $18,000.
185—23

I think the property deeded to me was worth less than the amount of his indebtedness to me."

The sworn answers of George W. Lyon, Aaron Lyon and Weston Arnold, and their testimony, deny all fraud and deny there was a secret trust, and not being overcome must be taken as true. We fail to find any sufficient testimony in the record, on the part of the complainant, which overcomes this evidence. Fraud being alleged, it must be established by a preponderance of the evidence. That was not done here.

We think the judgment of the Appellate Court was correct, and it will be affirmed.        *Judgment affirmed.*