American Hoist & Derrick Co. v. Hall.

110    463
a208s  597

## American Hoist & Derrick Co. v. William E. Hall et al.

1. FRAUD—*Preponderance of Proof Sufficient to Establish.*—A preponderance of the proof is all that is necessary to establish fraud.

Creditor's Bill.—Appeal from the Circuit Court of Cook County; the Hon. EDWARD P. VAIL, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902. Affirmed. Opinion filed December 4, 1903.

This is an appeal from a decree dismissing a creditor's bill filed January 9, 1899, by appellant against Charles E. Hall, (who died during the pendency of the suit), William E. Hall and others, to set aside certain conveyances of real estate made by Charles E. Hall to his son, William E. Hall, and to subject the property to the payment of complainant's judgment against Charles E. Hall, on the ground that the conveyances had been made without consideration and to hinder, delay and defraud the creditors of Charles E. Hall, and that the grantee held the property conveyed to him in secret trust for the benefit of the grantor. There was a reference to a master and the court approved his report, recommending the dismissal of the bill.

Complainant's judgment against Charles E. Hall was for $4,453.56 and rendered October 20, 1898, upon three promissory notes dated September 15, 1897, made by the Minnehaha Granite Company and another and guaranteed by said Charles E. Hall and others, one for $750 due thirty days after date, one for $1,725 due sixty days after date, and one for $1,679 due ninety days after date. Execution was duly issued and returned *nulla bona* December 20, 1898.

The real estate affected by the bill is all situate in Chicago and (omitting the legal description) is as follows: 3550 Vernon avenue, 7143 South Chicago avenue, 8457 and 8459 Ontario avenue, and 5235 Wabash avenue. The deeds, four in number, were all warranty deeds and acknowledged before Elisha Whittlesey, Jr., as notary public. The one conveying the Vernon avenue property is dated July 21, 1897. The acknowledgment bears date the same day, but

the deed was not recorded until September 28, 1897. The other three deeds are dated and acknowledged September 28, 1897, and recorded October 1, 1897. The deed conveying the South Chicago avenue lot recites a consideration of $2,000 and states the property is subject to an incumbrance of $6,000. The deed conveying the Ontario avenue lots recites a consideration of $2,000. The deed conveying the premises on Wabash avenue recites a consideration of $1,000 and states they are subject to an incumbrance of $3,000. In point of fact, the incumbrance was larger.

The record title to all the properties had been in Charles E. Hall for a considerable time before he conveyed them to William E. Hall. He acquired the title to the Vernon avenue property by deed dated January 26, 1889, and recorded March 27, 1889; to the South Chicago avenue lot by deed dated May 12, 1890, and recorded July 10, 1890; to the Ontario avenue lots by one deed dated January 30, 1890, and recorded April 20, 1894, and another deed dated January 30, 1891, and recorded April 20, 1894; and to the Wabash avenue property by deed dated April 26, 1893, and recorded May 8, 1893. The Ontario avenue lots were bought under contract and the deeds dated back when all payments had been made.

The defendant William E. Hall in his answer alleged that the Vernon avenue property had been purchased with his means, that he had always been the real owner of it and that Charles E. Hall had held only the naked legal title; and as to the other properties he claimed that while the whole record title had stood in Charles E. Hall, yet he actually owned only an undivided half interest in them and that he, William E. Hall, had always been the equitable owner of the other half and had contributed one-half of the funds used in purchasing them.

HOYNE, O'CONNOR & HOYNE, attorneys for appellant.

JOHN W. SMITH, attorney for appellees.

MR. JUSTICE STEIN delivered the opinion of the court.
The rule invoked by counsel, that where one person puts

American Hoist & Derrick Co. v. Hall.

property in the name of another and thus enables him to acquire credit on the faith of it he can not defeat the claims of creditors who gave the credit on the strength of the record title, has no application to this case, for the reason there is no proof that before or at the time when Charles E. Hall guaranteed the notes upon which judgment was rendered against him, the complainant relied upon his being record owner of the real estate in question or even knew of his being such.

To sustain the allegations of its bill, complainant called as its witness the defendant grantee, William E. Hall. The substance, in part, of his testimony is that as early as 1882 he and his deceased father began dealing in a small way in real estate, purchasing and selling from time to time different pieces; that during this time the father was an employe of the Chicago City Railway Company, and looked after these transactions mornings and evenings or when not otherwise employed, and the witness was attending to his professional duties as a physician, leaving the details of the real estate management mainly to his father; that all the purchases, including the property involved in this suit (excepting that on Vernon avenue) were made on the joint account of both; that in all cases the witness, Dr. Hall, paid half the consideration and at different times advanced to his father divers sums of money to assist him in paying his share of the purchase price; that the title to the properties was taken and held in the father's name because the witness, being a physician, was afraid that patients might bring blackmailing suits against him for alleged malpractice; that once or more times every year there was an accounting between him and his father in regard to the income and expenses of the properties held on joint account; that the Vernon avenue property was purchased and paid for by Dr. Hall alone and had been occupied by him as a homestead since March, 1896; that on September 26, 1898, the date of three of the deeds, his father, being then indebted to him more than $9,000 for money advanced and loaned at various times, conveyed to him in good

faith and in part satisfaction of said debt his, the father's, one-half interest in all the properties in question excepting that on Vernon avenue, the latter having been conveyed previously, July 21, 1897.

Dr. Hall, as complainant's witness, further testified that for many years prior to January, 1895, he carried a small pocket memorandum book in which he entered the amounts advanced by him to his father; that this book he had lost; that at the time of its loss, the amounts in his father's account in it had been footed up and carried forward and that the amount carried forward was $7,280; that on January 3, 1895, his father called at his office and he told him that according to his recollection the balance due him, as shown by the lost memorandum book, was $7,280; that thereupon his father took from his pocket a small memorandum in which he kept an account of the sums received by him from his son and after looking at it said the balance of $7,280 was correct; that the witness then directed his bookkeeper to enter this balance in his office ledger, which was done, and the following entry was made on page 197 of the ledger, showing an account marked " C. E. Hall," to wit, " 1895, Jan. 3, Acct. brot. up to 7280;" that the entry was made because of the loss of witness' memorandum book; that he himself entered the amount brought forward in a small memorandum book in which he afterward kept account of all sums advanced by him to his father after January 3, 1895.

The first item of this account is: " Acct. from c. b., $7280." The figure 7 is not in alignment with the figures 280, is smaller in size and is made with a finer and cleaner stroke. The master found the " 7 " was not written at the same time as the " 280."

No note or receipt or evidence of indebtedness of any kind from the father to the son was produced on the hearing. The witness testified he never took a note, receipt or other paper from his father except upon one occasion when a receipt was given; but it was not produced, the witness saying he did not know what had become of it.

American Hoist & Derrick Co. v. Hall.

The witness voluntarily produced a memorandum book found by him among his father's papers after his death, certain portions of which the complainant offered in evidence. In it the father kept an account with various parcels of real estate, including the properties in question. The accounts make no mention of the son as an owner of any interest in the properties.

The witness also voluntarily produced and offered in evidence a tax receipt book containing one receipt for taxes paid August 30, 1899, on the S. Chicago avenue lot, in which the " C " before " E. Hall " seems to have been changed to " W," either at the time of issuing the same or afterward. Other receipts show a similar change. When it was made or by whom is not shown.

It further appeared that the father had practically no property other than that which he conveyed to his son, and that in purchasing the same and other pieces in which the son claims that he and his father dealt at different times, the father was the only person known to the sellers and grantors and their agents. So also, when mortgages and trust deeds were executed upon the real estate, either to secure the unpaid purchase money or loans contracted by the father, he was generally the only person known in the transactions.

Dr. Hall was examined at very great length in behalf of the complainant, and as the master says, his " testimony and the other evidence does not indicate a state of facts or a course of dealing with his father or business habits such as are ordinarily found among business men. It is very indefinite and uncertain and contains many inconsistencies. His testimony is also directly in conflict with other evidence in the case in a number of particulars." To which it may be added that he testified without sufficient regard for the sanctity of an oath and in an easy, careless way, much as might be expected from a man who, according to his own statements, was in the habit of carrying large sums of money on his person or would keep his money in apparently unsafe and exposed places, or would entrust it to his neighbors for

temporary safekeeping. Yet he showed considerable famil-
iarity with the general features of most of the real estate
transactions, although unable to give with any degree of
accuracy the dates of deeds, the amount of the considera-
tion, how it was made up, whether in cash or notes and how
much was in notes; and he differed quite materially in many
instances from the accounts given by the parties or their
agents, to whom certain pieces were sold or from whom
they were purchased. In such matters, however, after some
lapse of time, accuracy of recollection is seldom met with.
The general impression created upon us by reading his
testimony is that while as to details he is by no means a
reliable or trustworthy witness and does not always pay
that regard to precision and exactness which is demanded
from a person on the witness-stand, yet he does not inten-
tionally utter a falsehood, and we can readily understand
how the master came to say that " the personal appearance
and manner of William E. Hall when on the stand did not
impress me unfavorably."

Appellee and others testified in his behalf that he had
carried on with one Pflaum, since deceased, as agent for the
owner, the negotiations for the purchase of the Vernon
avenue property and had paid to him the purchase price
for it; that they had frequently seen appellee handle and
have in his possession large sums of money and hand them
in whole or in part to his father to be by him used in the
joint deals in which they were engaged, and that appellee
for many years before the execution of the deeds sought to
be set aside had exercised acts of dominion over some of the
properties conveyed, such as listing one of them for sale
with a real estate agent, having a barn built and repairs
made on them, paying for the improvements, etc. There
was no controversy over the fact that he had been in the
sole occupancy of the Vernon avenue premises as his home-
stead since March, 1896.

There is no direct proof that the monetary transactions
between appellee and his father, testified to by appellee and
others, did not take place; nor is there any proof that he

did not enjoy the professional income which he claimed, except his slowness in paying a small debt.

The main difficulty with appellant's case is presented by the uncontradicted testimony of appellee and Whittlesey in regard to the circumstances under which the deeds in controversy came to be given and the then existing situation. Against the advice of appellee his father became interested and acquired some stock in the Minnehaha Granite Company, the notes of which he subsequently guaranteed. Having reluctantly advanced him moneys for that purpose, appellee later on became uneasy about the affairs of the company and his father's relations to it and suggested to him during the winter of 1896–97, that they had better have a settlement of their accounts and straighten out their real estate matters, appellee asking his father to deed over to him the Vernon avenue property, and as to the others that he would either buy him out or his father should acquire his interest. Accordingly they met by appointment at the office of Elisha Whittlesey, Jr., the then attorney of the father, in March, 1897, just about six months before the notes were guaranteed, and in the presence of Whittlesey, he participating and aiding therein, had a complete settlement, at which it was found that the father then owed his son over $9,000, and it was agreed that he should deed to him the properties in question (except that on Vernon avenue), "in satisfaction of the indebtedness," as Whittlesey testifies. Previously C. E. Hall had been at his lawyer's office a number of times and told him that he and his son owned jointly the properties on South Chicago, Ontario and Wabash avenues, and that he was deeply in his son's debt for moneys advanced to him to pay for his interest in these lots and to make other payments.

Some time elapsed before the arrangement agreed on was carried out, but on July 21, 1897, nearly two months before the contingent liability giving rise to the judgment upon which appellant's bill is based began to have any existence, the deed to the Vernon avenue premises was executed, acknowledged and delivered to appellee. It was filed for

record on the 28th day of September following, the same day on which the other deeds were made in pursuance of the agreement entered into six months before. At that time the only debts owed by C. E. Hall were secured, having arisen out of his and his son's real estate transactions. No occasion or inducement existed for the perpetration of a fraud. It is not shown that even on September 28th the son had any knowledge that his father had guaranteed the notes on the 15th. So far as appears neither party, to the deeds was actuated by any fraudulent motive in their execution; and if the grantor had such motive, it does not appear that the grantee knew of it.

Mr. Whittlesey was one of the solicitors in the present litigation and should have severed his connection with it before he gave his testimony. His failure to do so, while it subjects him to deserved criticism, does not disqualify him as a witness nor of itself justify the rejection of his testimony. We have carefully considered it and do not feel warranted in disregarding it.

If, as appellant's counsel contend, William E. Hall and Whittlesey conspired together and concocted a plot to defraud the creditors of Charles E. Hall, and their testimony be a tissue of perjury from beginning to end, they would more likely have made it a part of their plan to give Charles E. Hall either no interest whatever or a half interest in all the lots, not excepting the Vernon avenue property.

We agree with the master in holding that since the execution of the deeds William E. Hall has had charge and possession of the premises conveyed, and that there is no secret trust in him for the benefit of Charles E. Hall or his heirs.

The master and the chancellor erred in ruling that "fraud must be proven to the satisfaction of the court," and that the complainant "must satisfy the mind of the court of the truth of the allegations of the bill." A preponderance of the proof will suffice (Carter v. Gunnels, 67 Ill. 270; Kingman v. Reinemer, 166 Ill. 208; Bank v. Lyon, 185 Ill. 343; Smith v. Edelstein, 92 Ill. App. 38); but we do not think this measure of proof has been furnished.

The decree dismissing the bill will be affirmed.