ALLEN T. PRENTICE *et al.* Appellants, *vs.* RICHARD T. CRANE *et al.* Appellees.

*Opinion filed April 23, 1908—Rehearing denied June 5, 1908.*

1. FRAUD—*what is essential to authorize equity to rescind contract for misrepresentation.* To warrant a court of equity in rescinding a contract for misrepresentation, the misrepresentation must be in the form of a false statement of a material fact made by one party with knowledge of or belief in its falsity, for the purpose of inducing the other party to act, and with the result that the other party acts thereon in reliance upon the truth of the statement.

2. SAME—*what constitutes a statement of a material fact.* A statement in a letter, made for the purpose of inducing a party to execute a quit-claim deed to the writer, to the effect that the writer's wife, who was the other party's sister, had left a will, which had been inadvertently destroyed, by which she devised all of her property, including the property in question, to the writer, is a statement of a material fact the truth or falsity of which must be known by the writer, and if the statement is false but is relied upon by the other party as true, his quit-claim deed based thereon may be set aside in equity.

3. EVIDENCE—*effect where charge of fraud is in negative form.* The effect of a negative form of issue in cases involving a charge of fraud is not to relieve the party making such charge of the burden of introducing any proof, but in such case, and particularly where the facts lie wholly within the knowledge of the adverse party, evidence which renders the existence of the negative probable may be sufficient, in the absence of proof to the contrary.

4. SAME—*when charge of falsity of representation is sufficiently sustained.* Where a bill to set aside a quit-claim deed, made to the defendant without consideration, charges the falsity of his representation that his wife had left a will, which he had inadvertently destroyed, giving all of her property to him, the inference arising from the failure of the defendant, who denied the charge in his answer, to prove that such a will was ever made, which fact rested wholly in his knowledge, is sufficient to sustain the charge, when coupled with proof that he paid a large sum for a similar deed from another heir.

5. SAME—*refusal to allow defendant to testify does not excuse him from offering other evidence.* Where a bill to set aside a deed charges that a representation made by the defendant as to the existence of a certain will, which he claimed to have inadvertently destroyed, was false, the refusal of the court to allow him to tes-

tify that such representation was true, he being an incompetent witness, does not excuse him from offering such other competent evidence as is available or relieve him from the inferences to be drawn from his failure to do so.

6. TRIAL—*defendant should ask for time if he desires to procure evidence to meet amendment.* A complainant may amend his bill to meet the proof after the evidence has been heard, and if the defendant desires to procure additional evidence after the amendment he should ask for time in which to procure and present the same, otherwise his position is no different than if the matters introduced by the amendment had been in the bill originally.

APPEAL from the Circuit Court of Cook county; the Hon. G. A. CARPENTER, Judge, presiding.

This is a bill for partition of a valuable residence property situated on Michigan avenue, in the city of Chicago, occupied by Richard T. Crane, who claims to be the owner thereof. The original bill was filed by Alonzo T. Prentice, by his conservator, Allen T. Prentice. Alonzo T. Prentice died after the suit was commenced, and Allen T. Prentice and Lizzie P. Crane, his children and only heirs-at-law, were substituted as complainants. It is stipulated that the value of the property sought to be partitioned is $125,000. The complainants claim an interest in said real estate estimated to be worth $14,000. On December 8, 1904, Alonzo T. Prentice executed a quit-claim deed to Richard T. Crane, conveying all title and interest he held to the property in controversy. The right of complainants to a partition depends upon the question whether this deed of their father is valid or invalid. If the deed is sustained complainants have no interest in the property; if it is set aside as a cloud upon their title then they have the interest which belonged to their father. Complainants seek to have this deed set aside on the alleged ground that their father was not competent to execute a deed and because its execution was procured by the alleged false and fraudulent representations of the grantee. Upon a hearing in the circuit court of Cook

county there was a finding against complainants and a decree dismissing their bill for want of equity, from which this appeal is prosecuted.

Richard T. Crane bought the lot in controversy about the year 1889, for which he paid $51,450. By his direction the title was conveyed to his wife, Eliza A. P. Crane. Thereafter he built a residence upon the lot at a cost of over $100,000, which he occupied with his family until the death of his wife, which occurred in September, 1902. Alonzo T. Prentice was a brother of Eliza A. P. Crane. Crane had been married before he married his wife, Eliza. His first wife, by whom he had several children, was also a sister of Alonzo T. Prentice. Eliza A. P. Crane left no children. She left Alonzo T. and Leon Prentice, her brothers, Harriet Jane Fenn, a sister, Richard T. Crane, her husband, and Crane's children by his first marriage, as her only legal heirs. So far as the evidence in this record shows, Eliza A. P. Crane died intestate. Alonzo T. Prentice resided in Kalamazoo, Michigan. He was about eighty years old at the time of his death, in 1907. Early in 1902 he suffered a stroke of paralysis, and in the following year he had a second attack. In June, 1904, he was removed to a hospital, where he remained until his death. Lizzie P. Crane resided at Detroit, Michigan. On December 7, 1904, Richard T. Crane wrote her the following letter:

*"December 7, 1904.*

"DEAR LIZZIE—I have yours of 6th inst., and in reply would say that as I cannot very well get away from here so as to meet you in Kalamazoo, I am sending a gentleman from my office,— Mr. Robert Stiles,—who will hand you this letter and whom I have instructed to transact the business about which I wished to see you, which is as follows:

"When I bought the lot on which my residence stands I had the deed made to Aunt Ide, she in turn making a will, in which she willed everything to me. After her death, upon consulting a lawyer as to the necessity of filing the will, he said there was no occasion to do so under these circumstances. In the meantime I had forgotten all about the lot having been deeded to her, and about a week

ago, upon finding the will among some of my papers and think-
ing there was no occasion to keep it, I destroyed it. Upon going
through some other papers a few days later I found the deed, and
upon examining it discovered the fact that, as before stated, the
lot was deeded to her. Now, under the law, as I understand it,
one-half of the real estate left by a man's deceased wife goes to
him and the other half to her other heirs. Aunt Ide's other heirs,
of course, were her two brothers, Tom and Leon, and her sister,
Harriet. The destruction of this will being simply an oversight,
it is only right that the heirs should give me a quit-claim deed to
this property, and that is what Mr. Stiles goes to see you about.
This letter you may show to your father, and I wish you to be sure
he understands the facts.

"I would just add that the money (amounting to about $40,000)
which I distributed among Aunt Ide's relatives was not provided
for in the will. She simply left a memorandum in which she ex-
pressed a wish that this be done, and out of kindness and respect to
the family I did it, there being no legal obligation whatever upon
me to do so.

"Hoping there will be no delay in complying with my wishes in
this matter, I remain

"Yours very truly,

"R. T. CRANE.

To Mrs. Lizzie P. Crane."

Robert Stiles went to Kalamazoo and met appellant Liz-
zie Crane at a hotel. He there delivered to her the letter
above set out. Before Stiles left for Kalamazoo, Crane had
talked with him in regard to the importance of obtaining a
deed from Alonzo T. Prentice. Upon meeting Lizzie Crane,
Stiles explained to her that if the deed was not signed by
her father it would put her uncle to the trouble of proving
the will by witnesses, and he explained to her the method
of establishing such wills by proceedings in court. After
explaining this matter to her Lizzie Crane promised that
she would do all she could to get her father to sign the deed.
They went together to the hospital to present the matter
to Alonzo T. Prentice. On the way to the hospital Stiles
stopped at the office of a notary public by the name of
Burke, who at the request of Stiles accompanied them to
the hospital. Upon arriving at the hospital Burke remained
in an ante-room while Stiles and Lizzie entered Prentice's

234—20

room. Lizzie introduced Stiles to her father, and said: "Father, this is Mr. Stiles that Richard wrote you about." After a few words of conversation Lizzie produced the letter to her from Crane and read it to her father. After the letter was read Prentice said: "What shall I do?" This question was addressed to Lizzie, to which she replied: "I would rather you would say." Thereupon Prentice said he would sign the deed. Burke, the notary, was then called from the ante-room, and Prentice being unable to write his name, made his mark, and in reply to Burke's question whether he acknowledged the deed to be his free and voluntary act, he said "Yes." Stiles and Lizzie P. Crane, at Burke's request, signed the deed as witnesses. It is not pretended that any consideration whatever was paid for the deed. There is no proof that either Lizzie Crane or her father had any knowledge that Eliza A. P. Crane had died owning the property in controversy, and neither of them had any knowledge of the existence of the alleged will referred to in the letter of Crane.

The testimony as to the mental capacity of Prentice is conflicting. Burke and Stiles testified that they considered him competent to comprehend and understand the transaction, while ten witnesses who were acquainted with Prentice and had had opportunities for becoming acquainted with his mental condition testified that in their opinion he was not competent to transact ordinary business. There is some other evidence bearing upon the mental capacity of Prentice, but the foregoing outline will be sufficient for the disposition of what we regard as the controlling question in this case. Other facts in evidence will be referred to and their bearing upon the issues pointed out in the opinion which is to follow.

KRAUS, ALSCHULER & HOLDEN, and JAMES H. BARNARD, for appellants.

ASHCRAFT & ASHCRAFT, (E. M. ASHCRAFT, of counsel,) for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

If it be conceded that the evidence in this record does not go to the extent of showing the absolute incapacity of Prentice to comprehend the nature and effect of executing the deed in question, it cannot be denied that it shows such debility of body and feebleness of mind as to render him an easy victim to fraud and imposition. The amended bill alleges that in order to induce Prentice to execute the deed it was wrongfully, falsely and fraudulently represented to him, on behalf of Crane, that Prentice's sister (Mrs. Crane) had left a will devising all of her property to Crane and that such will had been inadvertently destroyed, and that such will so destroyed could be established by Crane in court but would cause him considerable trouble. The bill alleges that this representation was false and known to be false by Crane, and that the same was made with the fraudulent purpose of inducing Prentice to execute a deed conveying to Crane property valued at $14,000, the true state of the title to which was known to Crane and not known to Prentice. These allegations are all denied by appellee Crane's answer.

As we understand appellee Crane's position in regard to the charge of fraud and misrepresentation, it is that the burden of proof is upon appellants to establish, by a preponderance of the evidence, all of the essential elements of the charge, one of which is the falsity of the representation, and that appellants must fail in this action because it is asserted that there is no proof that the statements in Crane's letter concerning the making and destruction of the will of Eliza A. P. Crane were untrue. A misrepresentation which will warrant a court of equity in rescinding a contract must contain the following elements: First, its form must be a statement of fact; second, it must be made for the purpose of inducing the other party to act; third, it must be untrue;

fourth, the party making the statement must know or believe it to be untrue; fifth, the person to whom it is made must believe in and rely upon the truth of the statement; sixth, the statement must be material. (Pomeroy's Eq. sec. 876.)

Crane's letter of December 7 purports to contain statements of fact which were material and well calculated to have a controlling influence on the mind of Prentice in deciding whether to comply with the request to make the deed. It is stated in the letter that "when I bought the lot on which my residence stands I had the deed made to Aunt Ide, she in turn making a will in which she willed everything to me." This is, in form, a statement of facts. Crane necessarily knew whether the statements were true and Prentice did not. There is no evidence that either Prentice or his daughter had any previous knowledge concerning the deed or the will. The form of the narrative in the letter indicates that the writer assumed that the party addressed had no information on the subject of the letter. The above statements in the letter are preceded by this language: "I am sending a gentleman from my office,—Mr. Robert Stiles,—who will hand you this letter and whom I have instructed to transact the business about which I wished to see you, which is as follows." Crane then proceeds to give a detailed account of the whole transaction regarding the deed, the will, the consultation of a lawyer, the advice of the lawyer to the effect that there was no occasion to file the will for probate "under these circumstances," the forgetfulness of the writer about the deed being in his wife's name, the destruction of the will, and finally the finding of the deed. The whole letter implies that the writer is opening up the subject to one who knew nothing whatever about it. The statement that Mrs. Crane left a will naming her husband as sole beneficiary, made to this paralytic old man, who must have realized that he would soon follow her to the grave, would appeal to him with peculiar force to exe-

cute a deed which would carry out the wishes of his sister. Subsequent events show that the consequences to be expected followed. The deed was signed and the business which Crane had instructed Stiles to transact was finished. If the representations contained in this letter were false, then all the elements of a fraudulent representation are here and this deed cannot stand. Were these representations false? The law presumes in favor of their truth. Without any evidence the finding on this question must be in favor of Crane.

Where a party asks a court to believe a proposition and to base a finding thereon in his favor, the law casts the burden on him of furnishing the evidence upon which such finding can legally rest. This rule applies to cases involving a charge of fraud, against the existence of which the law raises a presumption in favor of honesty and fair dealing. Thus, the burden is upon the party who asserts that a contract or deed was obtained by fraudulent representations, or that a will was obtained by fraud or undue influence, or that property has been conveyed in fraud of creditors, to establish the charge by a preponderance of the evidence. (Jones on Evidence, sec. 190; *Bowden* v. *Bowden,* 75 Ill. 143.) This rule is not rendered inapplicable to the case in hand by reason of the fact that the form of the issue is negative or because the facts bearing upon the question lie peculiarly within the knowledge of Crane, although, as we shall presently see, these circumstances have an important bearing on the quantity of proof required. To prove the falsity of the representation that Mrs. Crane left a will devising her property to Crane involves the proof of a negative,—that is, proof that Mrs. Crane left no such will.

In *Anderson* v. *Irwin,* 101 Ill. 411, this court, speaking by Mr. Justice Mulkey, announced one of the foundation principles of the law in the following words: "The law is intended to be practical in its application to the varied transactions and circumstances which go to make up the affairs of life and which are constantly giving rise to legal contro-

versies that have to be settled in courts of justice. Indeed, most of the rules of evidence have been established with direct reference to this principle. Thus, it is a familiar rule that no evidence will be received of a fact which, from its very nature, shows there is better evidence of such fact, without first satisfactorily accounting for the absence of the higher order of evidence,—or, more briefly, the law requires in proof of a fact the best attainable evidence. The counterpart of this rule is, the law is always satisfied where the fact sought to be established has been proven by the best evidence of which, in its nature, it is susceptible."

To require appellants to prove the issue here involved, beyond a reasonable doubt or by evidence sufficient to convince the mind, would be imposing an impossible burden upon them. Under such circumstances the law is satisfied with a less quantity of proof than would be demanded under other circumstances. The rule of the common law as laid down by Greenleaf and approved by numerous decisions of this court is, that where the subject matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party. This rule is applied to both civil and criminal prosecutions for a penalty for doing an act which the statutes do not permit to be done by any persons except those who are duly licensed therefor, as for selling liquors, exercising a trade or profession, or the like. Here the party, if licensed, can immediately show it without the least inconvenience, whereas if proof of the negative were required the inconvenience would be very great. (1 Greenleaf on Evidence, sec. 79; *Harbaugh* v. *City of Monmouth,* 74 Ill. 367; *Weber* v. *Christen,* 121 id. 91.) The case at bar does not fall within the above rule, and it is only referred to to show the effect, in the cases to which it applies, the negative form of the issue may have where the facts to prove or disprove the same are peculiarly within the knowledge of the opposite party.

The effect of a negative form of issue in cases involving charges of fraud is not to relieve the party making such charge of the burden of introducing any proof, but the law will be satisfied with a less quantity of proof; and this is particularly so where there is the concurring circumstance of the facts being within the knowledge of the adversary party. Evidence which renders the existence of the negative probable may be sufficient in the absence of proof to the contrary. (Jones on Evidence, sec. 178.) In *City of Beardstown* v. *City of Virginia*, 76 Ill. 34, in discussing the quantity of proof required where the issue is negative, this court, on page 44, said: "Full and conclusive proof, however, where a party has the burden of proving a negative, is not required, but even vague proof, or such as renders the existence of the negative probable, is in some cases sufficient to change the burden to the other party.—*People* v. *Pease*, 27 N. Y. 45; *Commonwealth* v. *Bredford*, 9 Metc. 268; 1 Greenleaf on Evidence, sec. 80." This rule is again approved by this court in *Vigus* v. *O'Bannon*, 118 Ill. 334. In *Behrensmeyer* v. *Kreitz*, 135 Ill. 591, this court, speaking in reference to the presumption that an alien-born citizen has been naturalized from the fact that he has voted, on page 627 said: "But that since the presumption of the law involves the necessity of proving a negative, the difficulty of so doing requires that slight proof ought to be sufficient to shift the burden." To the same effect are *Dorsey* v. *Brigham*, 177 Ill. 250, and *Rexroth* v. *Schein*, 206 id. 80.

By reference to the evidence in this record we find that on December 9, 1905,—several months after this suit was instituted,—appellee Crane purchased from Leon H. Prentice his interest in the property in question, for which he paid him $13,999.60. The interest obtained under this deed is the same in quantity as that which is claimed by appellants. The payment of this large sum of money for a quit-claim deed is inconsistent with the truth of the statement in the letter that Crane's wife had willed everything to him.

It cannot be said that he paid Leon $14,000 merely to avoid a lawsuit with his wife's relatives. As already suggested, this suit was then pending and the deed from Leon Prentice had no effect upon it. Leon Prentice was a party to this suit, and might have been made a party to a cross-bill which might have been filed by Crane for the purpose of establishing his title under a lost will. If Crane voluntarily destroyed the will, as he claims in his letter, this act would render the establishment of the will difficult, but not impossible under the law. In Redfield on Wills, (vol. 3,) in a note found on page 17, it is said: "Where a person who asks for the probate has himself destroyed the instrument after the death of the testator, although a copy is produced, the court will require the most satisfactory evidence of all the facts necessary to be established," citing *Moore* v. *Whitehouse,* 11 L. R. (N. S.) 458.

The jurisdiction of a probate court to establish and admit to probate lost, destroyed or suppressed wills is recognized by this court. (*Beatty* v. *Clegg,* 214 Ill. 34.) Crane's failure to offer any proof to show the existence of a will affords a basis for the inference that no will ever existed. He claims in his letter that he destroyed the will. If this be true he must have seen the will, and examined it sufficiently at least to determine that it was a will. In addition to this, it is not unreasonable to suppose that if his wife made a will he was cognizant of the fact at the time. This inference is strengthened by the fact that he suggests the name of a lawyer, now dead, who is supposed to have written the alleged will. If a will was executed as claimed, it must have been witnessed, otherwise it would not be a will. Crane must have known who these witnesses were. He failed to call them, or suggest their names so that appellants might call them. There is not a scintilla of evidence in this entire record that has the slightest tendency to prove that any will ever, in fact, existed. Crane represents in his letter that he had voluntarily donated and distributed $40,000 to the rela-

tives of his wife, but there is no proof in the record of such payments. Whether he made such payments or not is not of controlling importance, but it is strange that a matter of this character, which, if true, was evidently easy to show, should be left to rest on the bare assertion of Crane in this letter. He offered to testify that the statements in this letter were true. Upon objection being made the court held that he was incompetent, and this ruling is conceded to be correct by his counsel. This offer does not, in our opinion, relieve Crane from the inferences to be drawn from his failure to present other evidence in support of the truth of his representations after the evidence offered was sufficient to overcome the presumption of law that they were true and raise a reasonable probability that they were false.

Appellee Crane suggests that the case was tried on the issue of the mental capacity of Prentice, and that the issue of fraudulent representations was not made until the evidence was taken. This is true, but we fail to see how this circumstance can avail as an excuse for not offering evidence, if he could do so, to support the truth of his statements in regard to the will. Appellants certainly had the right, under the statute, to amend their bill and introduce allegations to meet the conditions of the proof after the evidence was heard. If Crane had other evidence which he desired to offer after the amendment he should have applied to the court for time in which to procure and present the same, but no application for this purpose was made. Had he made a sufficient showing the court would doubtless have given him reasonable time to offer any evidence he might be able to present, but he did not ask for time or even suggest that he could produce other evidence if time was allowed, but rested his case upon the evidence then in the record. Under these circumstances we think his situation is not any different from what it would have been had the charge of fraudulent representations been in the original bill.

We have not discussed the evidence in its direct bearing upon the issue as to the mental capacity of Prentice at the time the deed was executed and refrain from expressing any conclusion thereon. After a careful consideration of this case we have reached the conclusion that under the evidence the charge in the bill that the execution of the quit-claim deed was procured through false and fraudulent representation is sustained.

The decree dismissing the bill is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed. *Reversed and remanded.*