**Bishop Estate**

*Millard A. Ullman*, for accountants.

*N. F. Keller*, for Ellen C. Gilbert.

WINGERD, P. J., March 19, 1948.—Blaine C. Bishop, late of Waynesboro, Franklin County, Pa., died August 5, 1945, testate. Letters of administration c. t. a. were granted on August 11, 1945, to Lulu B. Bishop and Clair W. Bishop, being respectively the mother and brother of decedent. The first and final account of the administrators c. t. a., showing a balance for distribution of $19,835.96, was filed on May 16, 1946, together with the statement of proposed distribution attached, which awarded assets in kind at the appraisement to Lulu B. Bishop, mother of decedent, at the value of $12,192.80, and the balance in cash in the amount of $7,643.16, or a total of $19,835.96. In other words, the entire estate was awarded to the mother under the Intestate Act because the sole beneficiary under the will, an aunt of decedent, had predeceased decedent, leaving no spouse or children to survive her. Among the assets purported to be distributed in kind was real estate appraised at $6,250. In the account the accountants charged themselves with the real estate at the appraised value and this swelled the total debit side of the account to $22,743.21 and thereby increased accountants' commission. This was clearly improper as the administrators c. t. a. had, under the provisions of the will, nothing to do with the real estate as it passed to the mother under the intestate laws and there was no provision in the will giving to the administrators c. t. a. any power over the real estate. No exception was taken to including the appraised value of the real estate in the account and in the statement of proposed distribution

but its inclusion is so improper that the court takes cognizance of it. Exceptions were filed to the account and statement of proposed distribution on the ground that the administrators c. t. a. had not charged themselves with a certain diamond ring owned by Mrs. Ellen C. Gilbert, of the alleged value of $1,000, which decedent held as bailee and had not paid to Mrs. Gilbert the value of the ring or awarded it to her in the proposed statement of distribution. On petition of the accountants, an auditor was appointed to pass upon any exceptions to the account of the administrators c. t. a. and to make distribution of the balance among persons legally entitled thereto.

There were two claims presented before the auditor, one which was settled by stipulation of the parties, and the other, the claim of Mrs. Gilbert, alleging that decedent had in his possession a diamond ring of hers, valued at $1,000, and that she was entitled to either the ring or the value thereof. Evidence was taken before the auditor and the auditor filed his report, in which he found that the ring had been delivered by Mrs. Gilbert to decedent in February 1944 to have the diamond reset and that such bailment was for the benefit of both parties; that the ring had never been returned to Mrs. Gilbert and, as the accountants had not explained what had become of the ring, Mrs. Gilbert's claim should be allowed in the amount of $1,000, as the evidence sustained that as the value of the diamond ring delivered by Mrs. Gilbert to decedent. In the schedule of distribution included in the auditor's report, he awarded Mrs. Gilbert $1,000. In this schedule he also awarded the real estate, hereinbefore mentioned, to decedent's mother, at the appraised value, which, as has been stated, was clearly improper. The auditor also sustained the exceptions of Mrs. Gilbert to the account of the administrators c. t. a., insofar as such exceptions were consistent with his findings.

The administrators c. t. a. filed exceptions to the auditor's report. The auditor heard argument on the exceptions and changed his report, finding that there was not sufficient evidence to show that the ring had not been returned to Mrs. Gilbert and, as Mrs. Gilbert had failed to make out a prima facie case, that is, that although the ring had been delivered by her to decedent as bailee, since there was not sufficient evidence to find that he had not returned it to her, there was no burden on the accountants and her claim should be disallowed. To this changed report, Mrs. Gilbert took exceptions and these exceptions are now before the court. They raise one question: Did Mrs. Gilbert, claimant, make out a prima facie case, that is, did she show nonreturn of the bailed chattel to her by the bailee and so place upon the personal representatives of the deceased bailee the burden of coming forward with evidence to explain such failure to deliver on part of bailee?

There seems to be no question concerning the fundamental law involved, nor the facts of the case up to a certain point. The auditor found as a fact in his amended report that Mrs. Gilbert, who had nursed decedent's aunt and later moved to Baltimore, Md., was on very friendly terms with decedent; that decedent called at her home in Baltimore in February 1944, where, in the presence of a Mr. Comeau, a man who was a roomer and boarder in the apartment of Mrs. Gilbert, the latter at decedent's request, handed over to him a diamond ring, which had belonged to her mother, for him to have reset for her, and that at that time decedent promised to bring the ring back in person to the owner, Mrs. Gilbert, as soon as it was reset; that between February and June 1944 decedent was at Mrs. Gilbert's apartment twice when Mr. Comeau was present and at these times Mrs. Gilbert asked about the ring and decedent replied, in substance, that she should not be concerned, the ring would be

properly taken care of and returned as soon as it was reset. All these facts were found by the auditor and no exceptions are now in force in reference to them, the administrators c. t. a. having filed no exceptions to the auditor's changed or amended report. Although the auditor does not find it as a fact, there is evidence given by decedent's mother that decedent was only in Baltimore, at the most, twice between June 1944, and the time of his death and that on one of these occasions, which was either Christmas 1944, or Easter 1945, his mother was with him, and on another, in July 1944, he had gone to Baltimore to consult a specialist. She also stated that she would have known if he had been to Baltimore on other occasions during that period. This witness was called by accountants. In addition, Mr. Comeau, who, from the testimony, was very much interested in the ring himself and had offered to purchase it sometime before February 1944, and with whom Mrs. Gilbert was on very friendly terms, stated that after June 1944, at which time Mrs. Gilbert questioned decedent about her ring and was told by him that he would return it, stated that after that time he never saw or heard of decedent again. If decedent had returned the ring or been in touch with Mrs. Gilbert concerning it, the probability is that she would have spoken to Mr. Comeau, or he would have known of the return of the ring. This conclusion is easily reached from a consideration of the whole record in the case, showing the relation between Mr. Comeau and Mrs. Gilbert insofar as the disposition of the ring is concerned. The auditor saw and heard Mr. Comeau testify and found as facts the statements made by Mr. Comeau and in his conclusion of law number 6, which was not amended or changed, he states: "The general judgment of witness Comeau impressed the auditor as sound, his integrity appeared convincing." The above statement was made by the auditor in relation to Comeau's tes-

timony relative to the value of the ring, but the credence he gave his testimony and his statement as to Comeau's integrity, impel us to consider Comeau a credible witness and accept his statements as correct. Mrs. Gilbert's great trust in decedent is understandable when we consider that her will was in decedent's safety deposit box at the time of his death, having been found there by accountants.

The law is clear that in the case of a bailment, the bailor, relying on an oral contract of bailment when claiming that the property bailed had not been returned, and endeavoring to hold the bailee responsible therefor, has the burden to prove delivery to the bailee, demand and failure of the bailee to return the chattel. When the bailor has offered evidence sufficient to make out a prima facie case, the duty is then on the bailee to go forward with proof, explaining the nonreturn of the property: Shell v. Miller N. Broad Storage Co., 142 Pa. Superior Ct. 293. In the present case, there certainly was no necessity for a definite demand for the return of the ring at any particular time and the evidence shows that inquiries were made concerning it and reassurances given by the bailee, so in this particular case the burden was on the bailor to show delivery and nonreturn of the ring. Of course, the case presents a difficult situation as the bailee is dead and the bailor is incompetent to testify as to facts occurring prior to the bailee's death: Evidence Act of May 23, 1887, P. L. 158, 28 PS §322. The auditor in his first report found as a fact: "23. Dr. Blaine C. Bishop never returned said diamond ring to claimant." After the exceptions to his report were argued, he held that this finding should be stricken out and, in his opinion, he states:

"Testimony by Mrs. Gilbert being excluded, the witness Comeau's evidence, he not having been in the presence of claimant 24 hours a day daily until the time of Dr. Bishop's death, cannot go further than

proving that the ring was never returned to Mrs. Gilbert at any time when he was present. We are concerned with the period between Dr. Bishop's last visit to Mrs. Gilbert in June 1944, according to the testimony of Comeau, and the death of Dr. Bishop more than a year later on August 5, 1945. There is some testimony by Dr. Bishop's mother to the effect that Dr. Bishop was not in Baltimore except for one trip with his mother, after the June 1944 visit. Even if this could be accepted as proof that Dr. Bishop did not visit Mrs. Gilbert at her apartment during this period, it still does not rule out the *possibility* of the ring having been returned to Mrs. Gilbert by mail or other method of delivery.

"The auditor is therefore constrained by the state of the law and facts to rule that there is not sufficient proof in the record to establish nonreturn of the ring to claimant before decedent's death and therefore, claimant not having shown a prima facie case, her claim must fail." (Italics ours.)

The controlling question involved is whether or not Mrs. Gilbert has sufficiently shown that the ring was not returned to her prior to decedent's death to make out a prima facie case. If she has, then she should be allowed to recover as no explanation of decedent's failure to return the ring has been given by his personal representatives. On the other hand, if she has failed to do so, then her claim must be disallowed. In considering this question, there are several matters which are rather important. As the ring in the present case was delivered to the bailee upon his assurance that he would bring it back in person to bailor, it was his duty to so return it: 8 C. J. S., 305 §37; 6 Am. Jur., 297 §209. We cannot assume that he would break his agreement, evade his obligations and return the ring otherwise than in the manner he had agreed to do. We cannot assume that he violated his duty by returning the ring in a manner other than the way

in which he had agreed to do. After June 1944, when he still had the ring, so far as the evidence discloses, he, according to evidence produced by the accountants, was only in Baltimore twice. Once in July 1944, to consult a specialist, and once when his mother was with him. This gives the evidence its broadest interpretation. The auditor and exceptant analyze the testimony of Mrs. Bishop, the bailee's mother, as showing only one trip to Baltimore, and that in her company. It is true that her testimony is rather indefinite but it seems to refer to two different times, on only one of which the ring could have been returned without her knowledge, and the fact that that time the trip was made for the definite purpose of consulting a specialist, tends to negative the conclusion that the ring would have been then returned. To the court, a much stronger circumstance is the fact that the witness Comeau, who continued as a boarder and roomer in Mrs. Gilbert's apartment and, under all the circumstances, would in all probability have known if the ring had been returned to Mrs. Gilbert, either from actual knowledge or from Mrs. Gilbert's statement, states positively in referring to the visit of decedent to Mrs. Gilbert, around the end of May or the early part of June, "That was the last time that I seen or heard of Dr. Bishop". This was the visit at which decedent, in answer to Mrs. Gilbert's inquiry about the ring, stated, "Don't worry, I'll be back and bring the ring back with me".

The opinion of the auditor indicates that he feels that the proof necessary to sustain Mrs. Gilbert's claim and cause the personal representatives of the bailee to come forward with evidence must amount to an absolute demonstration. He says the evidence of Comeau is of little value because he was not with Mrs. Gilbert 24 hours in each day and that, even if the evidence of Mrs. Bishop were accepted as showing the ring was not returned personally, it did not negative

the fact that it might have been returned by mail or otherwise.

It is undoubtedly true that claimant, Mrs. Gilbert, is not relieved from the burden of proof because the essence of her present claim is the proof of a negative: Hunt v. Todd, 18 Pa. 316; Diehl v. School District of Borough of Minersville, 10 Schuyl. 143; Jones Commentaries on Evidence, 2nd ed., vol. 2, sec. 491, pages 878 and 879. However, the present case is unusual in that claimant, bailor, is the only person living who could definitely and positively testify that the ring had not been returned to her by the bailee during his lifetime. The bailee is dead and the bailor is incompetent to testify by reason of the Evidence Act of May 23, 1887, P. L. 158, 28 PS §322. Under such circumstances, as the only persons who could testify definitely to the negative fact, which is an essential element in claimant's case, are unavailable, claimant must depend upon facts and circumstances from which the negative assertion can be inferred. Under such circumstances, to hold that plenary proof of the negative assertion is necessary to meet the burden cast on claimant and to constitute a prima facie case is unreasonable. If such proof were necessary, then, in all cases of personal transactions between two parties, where one died and the other's claim against decedent's estate rested upon a negative fact, of which the living one only had personal knowledge, recovery could never be made, no matter how meritorious the claim. The estate of decedent is never put in the same position as claimant in a case of that kind because the personal representative of decedent can always call claimant or make claimant competent, if desirable.

Necessarily from a practical and equitable standpoint, what evidence is necessary to meet the burden of proof depends largely upon the particular circumstances involved in the case under consideration. This is particularly true in a case where it is necessary to

show a negative fact and it is practically impossible to produce evidence which, if believed, eliminates all possibility of the happening of the event involved. In 31 C. J. S., 720-721 §112, under the heading "Proof of Negative Facts", we find:

"In deciding, however, what quantum of evidence shall be deemed sufficient, the practical limitations on proof imposed by the nature of the subject matter or the relative situation of the parties will be considered. The court will more promptly discharge a litigant from the burden of evidence where the proposition is a negative one; and the burden of evidence is sustained by proof which renders probable the existence of the negative fact, circumstantial evidence being sufficient, and nothing in the nature of a demonstration being required."

Jones Commentaries on Evidence, 2nd ed., vol. 2, sec. 491, pages 878 and 879, states:

" 'Whoever desires any court to give judgment as to any legal right or liability dependent on the existence or nonexistence of facts which he asserts or denies to exist, must prove that those facts do or do not exist.' It is conceded, therefore, that the burden is upon him who asserts the affirmative in substance, rather than in mere form.

"It is utterly immaterial that a particular assertion is stated in the negative, except that in such cases a smaller amount of proof than is usually required may avail. Such evidence as renders the existence of the negative probable may change the burden to the other party."

The foregoing seems to be the general rule and is certainly justified by reason and fairness. We find no case directly in point in Pennsylvania but in Glou v. Security Bene. Assn., 114 Pa. Superior Ct. 139, 144, the principle is recognized in relation to the burden of proof itself, and in Commonwealth v. Bates et al., 1 Pa. Superior Ct. 223, 233, in relation to the amount

of proof necessary to meet the burden. In the latter case, although the basis is the fact that the subject matter lies particularly within the knowledge of the opposite party, the authorities cited do not rest the rule exclusively on that ground and neither does the digest of the case in 15 Vale's Pa. Digest, §92. The rule is especially applicable when the opposite party has knowledge but such fact is not a sine qua non: Prentice v. Crane, 234 Ill. 302, 84 N. E. 916, 919. The general rule is as stated in C. J. S. and Jones Commentaries on Evidence, above referred to.

Under the peculiar circumstances of the present case, we feel that the burden of proof is met when facts are shown from which it can be reasonably inferred that the evidence of the negative fact asserted is entirely probable. From the evidence which we have referred to it certainly can be reasonably inferred that in all probability the bailee did not return the ring to the bailor. In fact, without invoking the doctrine discussed, it seems to this court that on the general principle, that the burden of proof can be met by showing circumstances from which the fact to be proved, whether affirmative or negative, can be reasonably inferred, not merely conjectured, claimant has met her burden: Whigham v. Met. L. Ins. Co., 343 Pa. 149, 154, 22 A. (2d) 704; Waldron v. Met. L. Ins. Co., 347 Pa. 257, 260, 31 A. (2d) 902. As claimant in this case has met her burden of proof and shown a prima facie case, the personal representatives of the bailee must come forward with evidence explaining the nonreturn or showing the return of the ring.

We recognize fully that the findings of fact of an auditor, who has seen the witnesses and heard the evidence, must be given great weight and in many instances are practically conclusive; nevertheless, the court is not bound by findings of fact of an auditor, which are deductions or inferences from facts not in substantial dispute: Sellers & Co., Inc. v. Clarke-Har-

rison, Inc., et al., 354 Pa. 109, 118, 46 A. (2d) 497. In the present case, the finding by the auditor that there was not sufficient evidence to support a finding by him that the ring had not been returned by the bailee to the bailor is not binding upon this court. In fact, when we consider that the auditor in his first report found as a fact that the ring had not been returned by the bailee to the bailor and then, after argument on exceptions filed, struck out this finding because there was not plenary proof thereof, as stated in his opinion, we must realize that, as plenary proof is not necessary, the finding of the auditor in his first report supports the court's conclusion. As we feel that claimant has met her burden of proof and as the representatives of the deceased bailee have offered no explanation of the nonreturn of the ring, the claim of the bailor must be allowed. The evidence produced by the personal representatives of decedent does not contradict the testimony produced by claimant and the findings of fact of the auditor, unexcepted to, set forth that the ring was delivered by the bailor to the bailee to be reset and to be delivered in person by the bailee to the bailor. No evidence is produced which negatives or explains the nonreturn of the ring by the bailee to the bailor and there is no contention that there is.

The auditor found as a fact that the ring had a value of $1,000. This finding was in his original report and excepted to by accountants. The exception was overruled and the finding is part of his amended report. The exception to this finding was never renewed according to our rules of court and no new exception was taken to the finding in the amended report. The court, under these circumstances, has nothing before it which questions the correctness of the finding and, therefore, Mrs. Gilbert's claim is allowed against the estate of Blaine C. Bishop, deceased, in the amount of $1,000. However, if we con-

sider the original exception to this finding, nevertheless, we would overrule it. There is evidence that the diamond in the ring in question was a little over two carats in size and that the retail value of a diamond in the old cut is $600 per carat and in the new cut $900 per carat, excluding tax. This evidence justifies the finding of the auditor to the effect that "30. The diamond ring delivered by Mrs. Gilbert to Dr. Bishop was of the value of $1,000".

Now, March 19, 1948, exceptions II b, II c, II 1a, II 1b, II 1c of claimant, Mrs. Ellen C. Gilbert, to auditor's amended report are sustained. The claim of Mrs. Ellen C. Gilbert is allowed in the amount of $1,000 and distribution shall be made in accordance with the following schedule: . . .