## CHARLES B. KNEELAND vs. HORACE M. WILLARD.

*Smuggled property.*

In August, 1866, the owner of a horse in Canaan, Vermont, took him one and one-half miles into Canada, to a race, where he kept him six weeks, when he returned with the horse to Canaan without having entered him at the custom-house, either in going or returning. In the following November, the owner, without informing him that he was a Canadian horse, sold him to the defend- ant, who, in the following June, sold him in good faith, without knowing he was smuggled or claimed as a smuggled horse, to the plaintiff. In August, 1867, the horse was seized and taken from the plaintiff by a U. S. revenue officer, and, after due proceedings, sold in September. In assumpsit brought Aug. 31, 1867, *Held,* (1) That the horse having been brought into the U. S. in violation of the revenue laws, became forfeited by that act; and (2) that the plaintiff is enti- tled to recover of the defendant the value of the horse at the time of the seiz- ure.

ACTION for the value of a horse sold by the defendant to the plaintiff.

One Nichols, of Hereford, Canada, in the fall of 1865, bought the horse in Canada, where the same was raised, and kept him there until the following October, when he sold him to one Blodg- itt, who duly entered him at U. S. custom-house in January, 1866, and took him to Canaan, in the State of Vermont. Soon after- wards, Nichols repurchased the horse in Canaan, of Blodgett, and after entering him at the custom-house, took him to Hereford where Nichols kept him, until June, 1866, when he entered him at the U. S. custom-house, and took him to the U. States, where in August, 1866, one Hibbard bought him and took him into Hereford, about one and one-half miles over the Canada line to a race, without hav- ing entered him, where he kept him about six weeks, and then, without entering him, took him back to Vermont, where in Novem- ber, 1866, he sold him to the defendant, without giving him any notice of its being a Canadian horse.

The defendant kept the horse until June, 1867, when he ex- changed the horse with the plaintiff for two other horses, and a

promissory note signed by one Ayer; that the defendant purchased the horse in good faith of Hibbard without notice that the horse was smuggled, or claimed to be smuggled, and sold him in good faith without any knowledge that the horse was smuggled or claimed to be, and never heard of any defect in the title to the horse, until he was sold in Portland, Sept. 11, 1867, by U. S. revenue officer; that the defendant never had any notice or knowledge of any defect in the title of the horse, until the commencement of this suit, he having been absent from home at the time of the service of the writ, and remained absent until after the sale of the horse by the revenue officer.

It appeared that the horse was seized and taken from the plaintiff, at Poland, Maine, on Aug. 29, 1867, by an U. S. Inspector of customs for an alleged violation of the U. S. revenue laws, and after due and legal proceedings, condemned and sold on Sept. 11, 1867, for $170.

If the plaintiff was entitled to recover, damages were to be assessed by the clerk.

*A. Black & A. S. Kimball*, for the plaintiff.

*E. Foster, jr.*, for the defendant.

DICKERSON, J. By the various acts of congress, passed to provide a revenue, and to guard against frauds upon the same, it is made unlawful, fradulently or knowingly to import or bring into the United States goods, wares, or merchandise, without entering them at the custom-house, and complying with the laws and regulations respecting the same. This requirement obtains both with respect to free and dutiable articles, and also to those that having been once within the United States, and removed therefrom, are brought back for use therein. The entries and doings at the custom-house furnish the revenue officers with the evidence by which, aside from proof of identity, they may determine whether goods, wares, or merchandise, found to have come into the United States from a foreign country, are liable to seizure and forfeiture. Hence when

the owner of any goods, wares, or merchandise, which have been duly removed from the United States, wishes to bring them back thereto, he must signify such purpose at the custom-house, and take the necessary steps to justify their return; so, also, if he would remove goods from the United States for a temporary purpose, intending to bring them back. Otherwise such articles being found in the United States will be liable to seizure and forfeiture. A remedy for any hardship that may result from such stringent enactments is provided in the authority given to the secretary of the treasury to remit any fine, penalty, or forfeiture thus incurred, when, in his opinion, there has been no willful negligence, or intention to defraud the government. Act of March 2, 1799, 1 Statutes at Large, 677; Act of July 18, 1866, "to prevent smuggling and further purposes;" Act of June 27, 1864, § 8, c. 164; Act of May 16, 1866, c. 82.

In general, when goods, wares, or merchandise have been brought into the United States in violation of the revenue laws, they are absolutely forfeited to the United States, and the forfeiture takes place at the time the offense was committed. Nor is an innocent purchaser of such property protected in his title. *United States* v. *1960 bags of coffee*, 8 Cranch, 398; *Gibson* v. *Hoyt*, 3 Wheat. 246; *Caldwell* v. *United States*, 8 How. 381.

The horse in controversy was raised in Canada. He was brought into the United States, returned to Canada, and again brought back to the United States. On these three occasions he was duly entered at the custom-house. The purchaser of the horse took him over the line a short distance into Canada, to a race; kept him there six weeks, and brought him back to the United States without entering him at the custom-house, either when he took him into Canada or brought him back to the United States. He sold him to defendant Nov. 10, 1866, without telling him that he was a Canadian horse. The defendant kept the horse till June, 1867, when he sold him to the plaintiff in good faith, without knowing that he was smuggled, or claimed to be smuggled. The horse was sold by the United States revenue officers in September, 1867.

The vender in possession of personal property impliedly warrants his title to the thing sold, and is bound to compensate the purchaser for the loss resulting from the want of a good title.   The horse, having been brought into the United States in violation of the revenue laws, became liable to forfeiture to the United States by that act.   The defendant had no title to the horse when he sold him to the plaintiff; and the plaintiff is entitled to recover the value of the horse of the defendant at the time of the seizure by the revenue officers.

APPLETON, C. J.; CUTTING, KENT, WALTON, DANFORTH, and TAPLEY, JJ., concurred.