## In re SYRACUSE GARDENS CO.,

(District Court, N. D. New York. April 3, 1916.)

1. BANKRUPTCY ⟨⟩140(2)—RESCISSION FOR "FRAUD"—RECLAMATION OF PURCHASE PRICE.

The president of the S. Company, which was then insolvent and which soon afterwards was adjudicated a bankrupt, sold 2,500 bushels of onions to claimant and received $1,000 on account. The S. Company did not then have onions sufficient to fill the contract, but relied largely for fulfillment of the contract on onions which it had contracted to purchase. The president, however, did not tell claimant that the company was financially embarrassed or that it did not own the onions it was selling, but told claimant that it then had 3,000 bushels in crates, though it did not have near that amount in crates aside from those it had contracted to purchase. The claimant made the payment in the belief that the S. Company had the property and would make delivery, and would not have made such payment if it had known of the company's insolvency or the fact that it did not own the property. Held, that while no actual fraud or deception was intended, and though the S. Company expected to fulfill the contract, there were such representations and concealment of material facts as amounted to "fraud" and entitle the claimant to reclaim such of the money paid by it as was still in possession of the S. Company and capable of being identified when it became bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 219; Dec. Dig. ⟨⟩140(2).

For other definitions, see Words and Phrases, First and Second Series, Fraud.]

2. BANKRUPTCY ⟨⟩11—COURTS OF BANKRUPTCY AS COURTS OF EQUITY.

A bankruptcy court is a court of equity and, controlled by the statute, may do equity guided by the well-defined and established principles of equity jurisprudence.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 11; Dec. Dig. ⟨⟩11.]

3. EQUITY ⟨⟩11—GROUNDS FOR RELIEF—FRAUD.

It does not always require actual and intentional fraud to justify relief in equity, and implied or constructive fraud growing out of representa-

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tions or the concealment of or failure to disclose material facts is many times ground for relief.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 21, 23, 24; Dec. Dig. ☞11.]

**4. SALES** ☞391(4)—RESCISSION FOR FRAUD—RECLAMATION OF PURCHASE PRICE.

A buyer of onions from a seller which soon after became bankrupt was induced to pay $1,000 on the purchase price by concealment of the seller's insolvency and the fact that it did not have onions sufficient to fill the contract. The payment was made by a check which was deposited in the bank and $500 of the proceeds remained in the bank when the seller became bankrupt. *Held*, that this identified money would be treated as specific property belonging to the buyer and subject to reclamation, though such relief could not be granted as to the specific check delivered.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1116; Dec. Dig. ☞391(4).]

**5. SALES** ☞214—WHEN TITLE PASSES.

At the time parties raising a crop of onions on shares on land of the S. Company executed a contract of sale of their share of the onions to the S. Company, the onions had so far grown that the harvesting would soon commence, and some had been pulled; but many things were to be done before they would be suitable for delivery. The contract provided that the onions were to be harvested, divided, and removed from the land as provided in the contract of leasing, and that payment was to be made within three days from the loading of the onions in cars for shipment. *Held*, that title did not pass to the S. Company.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 571–573; Dec. Dig. ☞214.]

In Bankruptcy. In the matter of the Syracuse Gardens Company, bankrupt. On application by the New York & New Jersey Produce Company for payment to it of certain money. Application granted.

The question at issue between the trustee in bankruptcy in the above-entitled matter and New York & New Jersey Produce Company, Inc., is whether the sum of $500 in the possession of the bankrupt at the time it was adjudicated a bankrupt October 6, 1915, or about that day, and which sum in bank passed first into the hands of the receiver appointed by this court and then into the hands of the trustee, belongs to and can be reclaimed and ordered repaid to said New York & New Jersey Produce Company, Inc., or whether said company is relegated to its proof and allowance of claim and compelled to share in any dividend that may be made herein.

Olmsted, Van Bergen & Searl, of Syracuse, N. Y., for trustee.

Thomas K. Smith, of Syracuse, N. Y., for New York & New Jersey Produce Co., Inc.

RAY, District Judge (after stating the facts as above). The bankrupt, Syracuse Gardens Company, a corporation of the state of New York, on the 5th day of May, 1915, was the owner of certain lands near the city of Syracuse, in the county of Onondaga, N. Y., especially adapted to the growing of onions, and on that day a lease of certain of the lands was entered into between the now bankrupt and Nicola Saracino and 'Congeta Saracino, by and under which the Saracinos were to sow, cultivate, and raise a crop of onions on said lands on shares. There were many conditions in the said lease or agreement which it is unnecessary to recite here. The Saracinos did sow onions

on said lands and cultivate same, and September 2, 1915, said onions
had so far grown that the harvesting thereof would soon commence,
and some had been pulled; but many things were to be done before
suitable for delivery. September 2, 1915, the Saracinos, by an in-
strument in writing, sold to the Syracuse Gardens Company, the
bankrupt, their share of the onions raised on said lands and then
thereon, and the harvesting of which had commenced, or soon would
commence, and which agreement of sale is as follows:

"Town of Cicero, N. Y., Sept. 2, 1915.

"In consideration of the sum of fifty dollars ($50.00) paid to us, Nicolo Sara-
cino and Congeta Saracino, of Syracuse, N. Y., receipt of which is hereby
acknowledged, we herewith sell to the Syracuse Gardens Company all of
our share of onions which we own through a contract with the said Syracuse
Gardens Company, dated May 5, 1915, for the growing of onions on their
land season of 1915. The said Syracuse Gardens Company to pay us a total
of forty-five cents per bushel (A) for No. 1 good, sound, marketable onions,
and fifteen cents per bushel for No. 2 grade onions, both grades to be screen-
ed over 1½-in. screen and ready for loading in car. The onions to be harvest-
ed, divided and the marketable onions removed from the said land, all as
provided for in contract dated May 5, 1915.

"The balance due us, after deducting from the total value of our share
of the said onions the sum first mentioned above, plus the Syracuse Gardens
Company's charge to us for fertilizer as per contract of May 5, 1915, plus
any labor performed by the said Syracuse Gardens Company and for which
a charge is provided against us in the above mentioned contract, is to be paid
to us within three days from the loading of the said onions by the Syracuse
Gardens Company in cars for shipment. The company to not charge the
Saracinos for loading and hauling to cars.

"Witness our hands and seals the date first above written.

"Note insertion (A).

"Nicolo Saracino.     [L. S.]
"Congeta Saracino.    [L. S.]

"Witness: Joseph Pirro."

All of the onions were on the premises.

The Syracuse Gardens Company had onions of its own, raised on
other lands near by, and which on the 2d day of October, 1915, were
being pulled and prepared for market as were the onions raised by
the Saracinos and the harvesting of which had been commenced at
that time. The Syracuse Gardens Company at the time the contract
of purchase was made expected to pay for the onions and have same.
October 2, 1915, said Syracuse Gardens Company was in fact in-
solvent and unable to pay its debts and obligations in full, and ought
to have known this fact; but there is no proof that the company had
actual knowledge of its insolvency.

[1] On the 2d day of October, 1915, the Syracuse Gardens Com-
pany, by its president, David B. Corse, sold to the New York & New
Jersey Produce Company, Inc., five cars of well-cured, good, sound,
good size 1½ screen yellow onions, 2,500 bushels of 56 pounds per
bushel, at 70 cents per bushel; but no delivery was made, as the Syra-
cuse Gardens Company did not have the onions ready for delivery,
and in fact relied largely for delivery and fulfillment of its contract
of sale with the New York & New Jersey Produce Company, Inc.,
upon the onions coming from the crop raised by the Saracinos. This
sale of onions by the Syracuse Gardens Company to the New York

& New Jersey Produce Company, Inc., was evidenced by a memorandum of sale and the receipt on account signed by the Syracuse Gardens Company, by D. B. Corse, its president, and which reads as follows:

"New York, 10/2, 1915.

"David B. Corse, President, Syracuse Gardens Company.

"Sold to New York & New Jersey Prod. Co. 5 cars of well-cured, good sound, good size 1½ screen yellow onions, 2,500 bus. of 56 lbs. @ 70¢ bus.

"Received payment on account of above sale $1,000.00.

"Syracuse Gardens Co.,
"D. B. Corse, Pres."

At the time of the execution of said paper or memorandum of sale, the New York & New Jersey Produce Company, Inc., paid to said D. B. Corse, the president of the Syracuse Gardens Company, the sum of $1,000 on account of such sale and purchase. The Syracuse Gardens Company paid out $500 of said $1,000 and deposited the other $500 in bank, where it still remains; but it was deposited in the name and to the credit of the Syracuse Gardens Company.

In point of fact and as has been found and as this court finds, the Syracuse Gardens Company had relied largely upon the Saracinos' crop of onions to comply with the sale made to the New York & New Jersey Produce Company, Inc., and, while it had some onions of its own in process of harvesting, it did not have anything like five cars of yellow onions or 2,500 bushels of onions of the description contained in the memorandum of sale above quoted. On the 5th day of October, 1915, as stated, the petition in bankruptcy was filed, a receiver of the property of the Syracuse Gardens Company was appointed. and all its property passed to the hands of said receiver. The Syracuse Gardens Company had not obtained title to the Saracinos' onions and, as stated, did not have onions with which to fill its contract with the New York & New Jersey Produce Company, Inc. In short, the Syracuse Gardens Company did not have the property it purported to sell to the New York & New Jersey Produce Company, Inc., and on account of which it received the said $1,000 from that company. On the 2d day of October, 1915, in short the Syracuse Gardens Company purported to sell and deliver to the New York & New Jersey Produce Co., Inc., property which it did not own or have, but which it expected to obtain from the Saracinos under its agreement with them. It received on account of this purported sale the sum of $1,000 of the money of the New York & New Jersey Produce Company, Inc. It is not the case of mere breach of an agreement to sell, but a sale of property on the 2d day of October, 1915, by the Syracuse Gardens Company, which it did not have or own and which property it never did obtain, have, or own, and the receipt by it of $1,000 of the money of the vendee.

While the Syracuse Gardens Company was insolvent and unable to pay its debts, there is no evidence that on the 2d day of October, 1915, it intended to go into bankruptcy or contemplated bankruptcy. No title to the onions passed to the New York & New Jersey Produce Company, Inc., as the Syracuse Gardens Company did not own the property it purported to sell; but of this fact the New York & New Jersey Produce Company, Inc., had no knowledge whatever.

The last-named company parted with its money to the Syracuse Gardens Company in the belief that the Syracuse Gardens Company had the property and would make delivery. No fraud was intended by the Syracuse Gardens Company; but, as matters turned, the transaction operated and operates as a fraud, and there was an utter failure of consideration. The question is, as above stated, can this court direct the return of the $500 in the hands of the Syracuse Gardens Company at the time it was adjudicated a bankrupt to the New York & New Jersey Produce Company, Inc., or does such $500 belong to the trustee in bankruptcy for the benefit of creditors, and is the New York & New Jersey Produce Company, Inc., relegated to its remedy of filing a claim and sharing in distribution? Every equity is in favor of the New York & New Jersey Produce Company, Inc., and the $500 should be returned if lawfully such return may be directed.

The Syracuse Gardens Company, by offering to sell and selling 2,500 bushels of onions of a certain quality and description, impliedly represented that it owned them and would and could deliver them and in substance so stated. It did not disclose to the purchaser the fact that it did not own or have such onions, and we may safely assume it honestly expected to have them by paying the Saracinos therefor when harvested and delivered. In fact, it did not have the ability to perform its contract with the Saracinos and pay for the onions and obtain title thereto, and did not. On these implied representations above set forth, and relying thereon and the statements actually made, and because of a failure to disclose material facts, the New York & New Jersey Produce Company, Inc., parted with $1,000 of its money to the Syracuse Gardens Company, $500 of which, identified, that company had on the 6th day of October, four days later, when it went into bankruptcy, and this money passed to the possession of the receiver and later to the trustee and is now in the possession of this court. The Syracuse Gardens Company parted with nothing therefor and did not have or own the property it agreed to turn over and deliver in exchange therefor.

[2, 3] The bankruptcy court is a court of equity and, controlled by the statute, may do equity guided by the well-defined and established principles of equity jurisprudence. It does not always require actual and intentional fraud to afford a remedy in equity. Implied fraud or constructive fraud growing out of both representations and the concealment of or failure to disclose material facts, many times, is ground for equitable relief. Mr. Corse, president of the Syracuse Gardens Company, testified that he said to Mr. Fleming, who represented the New York & New Jersey Produce Company, Inc., in the purchase of the onions and in the payment of the $1,000 as follows:

"I said to Mr. Fleming that we had some very good onions on our land at Syracuse ready for shipment in a very short time, and that they were| of good size and color, and they were in crates ready to be screened (an operation by which the small ones are separated from the large ones) and shipped, and the question arose whether we should ship them in bulk or bags, and we decided that, in case they wanted them in bags, they would send the bags to us and we would charge them a nominal amount or price for bagging them, and I explained that on account of certain conditions I would like the ready money, so they agreed to make an advance on these onions. * * * Q. Now,

after this talk with Mr. Fleming, did you go into the office of the company, or was this in Mr. Fleming's office? A. It was in Mr. Fleming's office. Q. Was there a memorandum made of your arrangement and a receipt given? A. Yes. Q. Did you at that time receive a check for $1,000 from the New York & New Jersey Produce Company? A. Yes."

He then said he signed and delivered the memorandum of sale and receipt above quoted.

The evidence is such as to justify and require a finding that the Syracuse Gardens Company was then in fact insolvent; that Mr. Corse knew it was financially embarrassed; and that the company did not own the onions it was selling, but did not communicate the facts within his knowledge to the said New York & New Jersey Produce Co., Inc. The evidence also justifies and requires a finding that neither Mr. Fleming representing that company, nor the company itself, would have advanced the $1,000 on the onions had they or either of them been informed of such facts as Mr. Corse actually knew. I think here were such representations and such concealment of material facts as entitles the New York & New Jersey Produce Company, Inc., to equitable relief and to reclaim the $500 deposited and not used by the Syracuse Gardens Company. True, no actual fraud or deception here was intended, but in obtaining such a large advance under such circumstances it was the duty of the president of the Syracuse Gardens Company to make full disclosure of the material facts, and clearly it was material that the Syracuse Gardens Company was financially embarrassed and did not own the onions or the greater part of the onions it was purporting to sell. The president testifies:

"Q. How many bushels did you tell him you had in crates? A. I told him 3,000 bushels."

Aside from the Saracino onions, the seller did not have near that amount in crates. Certainly it is not just or equitable that this trustee in bankruptcy shall retain all the onions the Syracuse Gardens Company did have, and it had hundreds of bushels, and also this $500 now in the possession of the trustee and paid to it under the circumstances mentioned. No right of any third party has intervened, or is to be affected by the return of this money to the party who paid it to the Syracuse Gardens Company for property which it did not own and which the party paying the money supposed that company did own and which that company represented it owned and expected to own, but was unable to obtain because of its insolvency and impending bankruptcy, and which money would not have been advanced or paid over had the party paying it been informed of the insolvency or financial embarrassment of the Syracuse Gardens Company, and of the fact that it did not own the property. The New York & New Jersey Produce Company, Inc., has several remedies. It has not concluded itself by electing one remedy in preference to another, and it may pursue the money and when found and identified, which has been done, in the hands of the trustee in bankruptcy of the Syracuse Gardens Company, which has parted with nothing therefor, reclaim the same. In 14 Am. & Eng. Encyclopedia of Law, 165, it is said, speaking of remedies in cases of fraud actual or implied:

"Recovery of What was Parted with. In General. If he has parted with money or property under the contract, as in the case of a sale and delivery of goods, or a purchase of goods and payment of the price, he may bring an action against the other party to recover the same. * * * Replevin. If he has parted with personal property, he may maintain an action of replevin to recover the specific property, unless it has passed into the hands of a bona fide purchaser for value."

[4] The trustee in bankruptcy is in the shoes of the bankrupt company, and neither has parted with anything, and, as stated, this money is in bank and identified. Not the specific check, but its proceeds, the check having been deposited in bank, and to the extent of $500 has not been drawn out. Equity should treat this identified money as specific property belonging to this claimant the New York & New Jersey Produce Company, Inc. See Root v. French, 13 Wend. (N. Y.) 570, 28 Am. Dec. 482, and cases cited in 14 Am. & Eng. Encyc. of Law, supra. Modern law ought not to be so stupid as to make a distinction between specific personal property, such as a horse, or a cow, or a machine (identified), and money, also identified and in the hands of the person who wrongfully obtained same and holds it under such circumstances that it would be unjust and inequitable for him to retain it.

The general principle in the case of sales is that when the seller has no title (the sale being of property which the seller represents himself as owning), and advances have been made on the purchase price, the buyer may recover back such advances. 35 Cyc. 602; Wolf v. Michael, 21 Misc. Rep. 86, 46 N. Y. Supp. 991; Kneeland v. Willard, 59 Me. 445; Cook v. Redman, 2 Bush (Ky.) 52; Porth v. Lux, 40 Mo. App. 162; Peckham v. Kierman, 13 R. I. 354; Charlton v. Lay, 5 Humph. (Tenn.) 496; Mabry v. Harp, 53 Kan. 393, 36 Pac. 743; Hamrah v. Maloof, 127 App. Div. 331, 111 N. Y. Supp. 509. In this Hamrah Case the seller did own the goods, having imported them without paying duties, and the goods were delivered; but the United States seized them, and they were lost to the buyer, and the buyer was held entitled to recover the purchase price paid. The recovery of the money paid in all these cases rests on the proposition that it does not belong to the seller, who had no title to the goods purported to be sold, but to the buyer, who has parted with his money without consideration. Therefore the money paid while in the hands of such seller is not his, but belongs to the buyer, who in fact was defrauded. If such a seller is insolvent and, with the money in his pocket or in bank, goes into bankruptcy, shall his trustee in bankruptcy hold same and distribute it to pre-existing creditors, or shall the court return it to the party from whom thus obtained and to whom it rightfully belongs? If there is an agreement between two persons to trade or exchange personal property, as for instance three cows for a horse, the one party representing to the other that he owns the property he contracts to deliver and the one party to the agreement making such representation receives into possession from the other the property he is to have in the trade, but goes into bankruptcy and it turns out that he did not and does not own the property he has agreed to deliver, may his trustee in bankruptcy retain the property so delivered by the

other party, or may that other party reclaim it on the ground of fraud and failure of consideration? Would it be a defense to the reclamation proceedings that the bankrupt had made a contract to purchase property, such as he was to deliver, and that he expected to have it for delivery but was prevented by bankruptcy? It seems to me that in such case there is no doubt of the duty of the court and trustee in the matter and that reclamation should be sustained. In such case, there may not have been any actual intent to defraud, but, as stated, such intent is not always essential to the avoidance and rescission of a contract.

If we assume that the president of Syracuse Gardens Company honestly expected the company would pull out of its financial embarrassments, continue business, obtain title to the onions, and make delivery, in all of which accomplishments he was mistaken, still that company was in fact insolvent and did not have or own the onions sold, and in obtaining the money of the buyer the president of the company failed to disclose its financial embarrassments, known to him, or the fact, also known to him, that the company did not own the onions, and hence the payment of this money was induced by material misstatements of fact and a failure to disclose material facts which under the circumstances should have been disclosed. Here proof of claim and sharing in distribution is not an adequate remedy, but would result in loss to this claimant New York & New Jersey Produce Company, Inc., and it is perfectly practicable to direct a return of this money. 16 Cyc. 83, 84.

In 20 Cyc. 8, 9, and 10, we find "fraud" defined thus:

"Fraud as a generic term, especially as the word is used in courts of equity, properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another. The classification of fraud most frequently used by courts and text-writers is: (1) Actual or positive fraud; (2) legal fraud or fraud in law; (3) constructive fraud. * * *

"A constructive fraud has been said to be 'an act which the law declares to be fraudulent, without inquiring into its motive; not because arbitrary rules on this subject have been laid down, but because certain acts carry in themselves an irresistible evidence of fraud.' * * *

"The same idea has been elaborated by Story, who says: 'By constructive frauds are meant such acts or contracts as, although not originating in any actual evil design or contrivance to perpetuate a positive fraud or injury upon other persons, are yet, by their tendency to deceive or mislead other persons, or to violate private or public confidence, or to impair or injure the public interests, deemed equally reprehensible with positive fraud, and therefore are prohibited by law as within the same reason and mischief as acts and contracts done malo animo.' "

It is true, of course, as found, that the president of the Syracuse Gardens Company, in making his representations and in failing to make disclosure, intended that the New York & New Jersey Produce Company, Inc., should act thereon, for he was seeking to make a sale of onions that company did not actually own and to obtain a large advance of money thereon. His object was to obtain the money then, but probably he intended and expected that the contract would be eventually fulfilled. Every element of actionable fraud was present. 20 Cyc. 13, and cases cited, where it is said:

"The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; '(3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury."

[5] My conclusions are that the title to the Saracino onions did not pass to the Syracuse Gardens Company; that the said company did not have title to onions of the kind described to fill its contract with the New York & New Jersey Produce Company, Inc.; that there was fraud by misrepresentation and concealment which in part induced the payment by the produce company to the Gardens Company of the $1,000 and justifies a rescission of the contract; that the title to the $500 identified and now in bank, and which came from the said produce company, did not pass to the Gardens Company and may be recovered; that same should be paid over to said New York & New Jersey Produce Company, Inc.

There will be an order accordingly.