## KLINE v. BLACKWELL et al.
### No. 6656.

Circuit Court of Appeals, Fifth Circuit.
March 25, 1933.

Rehearing Denied April 21, 1933.

John J. Lindsey and James M. Carson, both of Miami, Fla., and C. L. Chancey, of Fort Lauderdale, Fla., for appellant.

T. J. Backwell and A. Y. Clement, both of Miami, Fla., for appellees.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

The appeal is from a judgment at law by the court on a stipulation waiving a jury in favor of W. M. Huber, T. J. Blackwell, and

W. L. Gray against B. J. Kline for attorneys' fees due for defending a suit brought against Kline by Golden Isles Corporation. Reversal is asked because of the refusal of a motion to give judgment for Kline, and because of rejections of evidence offered by him.

The only plea was the general issue. The plaintiffs proved that prior to January, 1930, they had for many years practiced law as partners at Miami, Fla., and had represented Florida Land Holding Corporation, of which Kline, residing in New York, was president and principal owner, in many litigations. Some of these were unfinished when about that date Huber left the firm. He alone was personally acquainted with Kline. About February 1, 1930, Kline came to Miami, met Blackwell, and told him he was pleased with the services of the firm, regretted Huber's withdrawal, wished Blackwell & Gray to be associated with Huber in all litigated matters he might have in the future, and would so instruct Huber. Blackwell assented. On February 5th, Kline was sued as an individual for $163,000 by Golden Isles Corporation, turned the matter over to Huber to defend, and told him to associate Blackwell & Gray. This Huber did, and all defensive pleadings through the year of litigation which followed were signed by all three or by Blackwell & Gray only. No fees were agreed on. They won the case for Kline. These facts are not contradicted by Kline, but his position is that Huber and not himself employed Blackwell & Gray, and that Huber agreed to represent the case without charge because it grew out of another litigation which Kline claimed the firm had mishandled while representing Florida Land Holding Corporation. Huber denies any agreement to serve free, and says positively that Kline directed him to employ Blackwell & Gray. The conflicts in evidence are of course settled in favor of the plaintiffs by the judgment as if by a verdict. Kline claims, however, that the case is controlled otherwise by a letter dated June 4, 1930, signed and handed to him in New York by Huber. For three months previously Kline and Blackwell had been in disagreement by correspondence touching fees in certain cases handled for Florida Land Holding Corporation which had become acrimonious, and Huber on his own initiative had gone to New York to compose the differences. In doing so he gave Kline the letter reading thus: "Any and all agreements as to fees heretofore made in behalf of the firm of Huber, Blackwell & Gray were made by me personally, you not having met either Mr. Black-

well or Mr. Gray until February, 1930. All arrangements for fees have always been made between you and myself. Since the dissolution of the firm of Huber, Blackwell & Gray any and all matters as to fees on cases other than those where written agreements exist were intended to be adjusted by me personally, the intention being that I, and not Blackwell & Gray, shall make all adjustments pertaining to fees on all cases pending or on matters that may be handled in the future. I further beg to advise you that in the matters of Transoceanic, Inc. vs. Florida Land Holding Corporation, and Golden Isles Corporation vs. Benjamin J. Kline, the employment of counsel was made by you and the Florida Land Holding Corporation of myself individually, and that there has never been any employment by you or said Company of Blackwell & Gray in these matters. Their association in these matters is simply a matter that rests entirely between them and myself individually."

It is not shown that Blackwell & Gray authorized or knew of the letter. The partnership with Huber was no longer in existence. Huber as a witness was asked nothing about the letter, and he gave no explanation. Possibly he did not know at its writing of Kline's direct approach to Blackwell & Gray to retain them, and thought his letter was true. Possibly he merely meant to interpose himself as a mediator between Blackwell and Kline. In Kline's behalf it is urged that if the letter is true, Blackwell & Gray are misjoined as plaintiffs and there can be no recovery by any one in this joint action without an amendment striking them which might have been made under Florida Comp. Gen. Laws, § 4207; and that if the letter is false it misled Kline and estops from a joint recovery. We do not so agree. If Blackwell & Gray were in fact employed by Kline either directly or through Huber they could not be deprived of their right to look to Kline for compensation by anything that afterwards happened between him and Huber. Nor is there sufficient ground to hold Huber estopped to recover his part in the compensation due. Kline could not have been really misled, for he himself knew the facts binding him to Blackwell & Gray. The letter did not indicate at all that the service was to be free, and if it was not to be free the reasonable compensation due would be the same for the same services whether owing to the three, or to Huber only with the duty on him to settle with Blackwell & Gray. And since the reasonable compensation to be recovered is the same, whether under the true contract Black-

well & Gray should look to Huber and Huber to Kline, or whether all three may look directly to Kline, or whether all three may look directly to Kline, an error of misjoinder or variance in this particular would be harmless and no ground for reversal. Great American Ins. Co. et al. v. Peters (Fla.) 141 So. 745; 28 USCA § 391. The judge may well have found that in truth there was no agreement to serve free and that by the true contract all three plaintiffs could look directly to Kline, neither misconception nor misstatement of it by Huber unknown to and unauthorized by Blackwell & Gray being effectual to change it. Generally in the United States attorneys at law who are employed to render services without agreement as to fee are entitled to recover reasonable compensation, a promise to pay such being implied by law. 2 R. C. L., Attorneys at Law, § 114; 6 C. J., Attorney and Client, §§ 283, 331. Such is the law of Florida. Stitt & Co. v. Powell, 94 Fla. 551, 114 So. 375. The judgment rendered was authorized.

The letters offered in evidence by Kline, and excluded, related to the disputed fees claimed from Florida Land Holding Corporation in other cases. They contained no reference to the case of Golden Isles Corporation against Kline, or the fee in it. They were irrelevant. If, as Kline contended in some of them, refunds of fees were owing to the Florida Land Holding Corporation, they were not debts due to Kline nor was any setoff pleaded by him. The other rulings were refusals because of irrelevancy to permit quoted questions asked plaintiffs and their witnesses. They were not questions tending to identify the witness, to show his environment, the extent and accuracy of his information, his bias or feeling, or to bring out proper details of matters testified to by him, nor was there a general restriction of exploratory cross-examination such as was referred to in Alford v. United States, 282 U. S. 687, 51 S. Ct. 218, 75 L. Ed. 624. The effort was in many instances to bring out independent facts which under Florida practice would make the witness become the examiner's, with no statement of what the witness would say or must have said to speak truly. Without such information plainly given at the time the trial court cannot tell how to rule unless the question very clearly indicates its answer, nor can an appellate court tell whether the suppression of the question was really prejudicial. Should a new trial be ordered to have such questions answered, it might result only in finding out that the witness knew nothing about the matter or would testify the reverse of what the question indicated. Hence the wise rule that reversal will not generally result from the suppression of a question unless its answer appears or direct information is then given of the answer expected. Florida Railroad Co. v. Smith, 21 Wall. 256, 22 L. Ed. 513; Meador v. Natl. Liberty Ins. Co. (C. C. A.) 53 F.(2d) 731; McKinnon v. Lewis, 60 Fla. 126, 53 So. 940; Griffin v. Henderson, 117 Ga. 382, 43 S. E. 712, per Lamar, J. Turner v. United States (C. C. A.) 66 F. 280, applies the rule to a cross-examination. Most of the questions were irrelevant no matter how they might have been answered. Some put to the plaintiffs related to the conduct of other cases and to another client than Kline, and to a liability to repay fees therein. Some related to fee contracts in other cases not shown to be at all like Kline's case. If most of them were in writing as the questions implied, it would not prove that Kline in his first and only case had not acted less formally, especially since he was not denying that the attorneys did serve and their services were accepted by him. The questions put to the attorneys who gave evidence as to the amount of a reasonable fee had similarly irrelevant subject matters. Those asking if the witnesses had considered in making their estimates whether other counsel of equal capacity and skill might have been employed for less, and whether by reasonable effort other such counsel might have been employed for less, struck at a pertinent matter but were unfortunately put. The usual and customary charges for like services are proper to be proved and to be considered by expert witnesses. Monroe v. Birdsey, 102 Fla. 544, 136 So. 886; 6 C. J., Attorney and Client, § 331. But the questions may have meant whether lawyers could have been found who would have worked for less than the usual and customary or reasonable compensation. If an affirmative answer be assumed, it would be irrelevant because the law does not imply a contract to serve as cheap as the cheapest but at a reasonable fee. And the court was not informed whether the witnesses would have answered that there were cheaper lawyers of equal ability, or that if there were they had or had not considered that fact in making their estimates. The court fixed a fee less than any of the witnesses testified to.

No reversible error appearing, the judgment is affirmed.