JANECZKO et al. v. MANHEIMER et al.

No. 5260.

Circuit Court of Appeals, Seventh Circuit.

April 29, 1935.

Dominic P. Sevald and Mariann K. Sevald, both of Hammond, Ind., for appellants.

Alfred Beck, of Chicago, Ill., and Frederick C. Crumpacker, Edwin H. Friedrich, and Jay E. Darlington, all of Hammond, Ind., for appellees.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

SPARKS, Circuit Judge.

This was an action in which appellants, citizens of Indiana, sought to recover damages from appellees, citizens of Illinois. The facts arose out of .a transaction in which appellees sold and transferred to appellants certain city lots in an outlying district of Hammond, Indiana. The alleged wrong complained of was that at the time of the purchase, appellees, by their agent, represented the lots to be at a certain location when in fact they were not, but were in a much less valuable location than that represented. The first paragraph of complaint was based upon the alleged negligent and wrongful acts of appellees' agent in his representations of location, and the second paragraph proceeded on the theory of fraud and deceit of the agent with respect to those representations. The agent, John E. McGarry, a citizen of Indiana, was made a co-defendant in the original complaint, but before answer the complaint was dismissed as to him. The general issue was pleaded and the cause was submitted to a jury. At the conclusion of the evidence the court instructed the jury to return a verdict for appellees. That verdict was returned and judgment was rendered accordingly, and from that judgment this appeal is prosecuted.

The facts which are not disputed are as follows: The vendors of the land were Edward Manheimer and Belle R. Loeb, the other appellees being their respective spouses. Neither of them had ever lived in the vicinity of the land, and both had been suburban citizens of Chicago for many years. Appellants are husband and wife, and during all times in question were residents of Hammond, Indiana, where the husband was engaged as a contractor and builder of houses.

The land in controversy is part of a wild, undeveloped section of a mile or more in length in the eastern suburbs of Hammond, lying on the north and south sides of a paved boulevard, known as Summer Boulevard, running from that city to' Gary. Prior to this transaction that land on the south side of the boulevard was subdivided into what was known as Manufacturer's Addition to Hammond. Block One of that addition was re-subdivided into what was known as "Block One in Feeley's Re-subdivision." It consisted of forty-six lots and was owned by Edward A. Manheimer and Belle R. Loeb, except lot 19. It was bounded on the north and south by Summer Boulevard and Tenth Avenue respectively, and on the east and west by Michigan and Indiana Avenues respectively. Excepting Summer Boulevard, there was nothing but' unmarked stakes on the land to indicate where the streets, lot lines, or block lines were, and they could be determined accurately only by a surveyor. The entire addition was in its natural state, covered with small sand ridges and alternating sloughs, and its vegetation consisted of brush and scrub oak.

The vendors acquired title to the land in question in 1912, and held it as a speculation until 1927. They had in their possession a small blueprint of the block which correctly described and portrayed it as to block number and subdivision, and boundary streets. In 1927 the vendors sent this blueprint to McGarry, a real estate broker in Hammond, and listed the property with him for sale at a price of $125 per lot. The vendors did not point out the land to McGarry. They told him they were not able to do so for they had never seen it, and that they would not authorize him to have it surveyed. These facts were communicated to appellants by the agent. Appellees were not in Hammond when the deal was closed, and never saw the purchasers until the date of trial. McGarry advertised the lots for sale at $125 per lot, and in response thereto Adam Janeczko made inquiry of McGarry concerning them, and was informed by McGarry that he did not know their exact location, but would endeavor to get the information. The agent inquired at the city engineer's office and was shown a plat from which he concluded that the lots were located three blocks east of Parrish Avenue

which apparently was the closest available landmark. He, with Janeczko, went to what the agent thought was the intersection of Parrish Avenue and Summer Boulevard, and undertook to calculate the distance of three city blocks by using the speedometer on the agent's car, and came to what was thought to be the location of the lots. The purchasers said the agent told them that was the location of the block, and showed them the boundary lines. The only physical evidences of the location were certain unmarked stakes driven in the ground. No survey was made, but the agent had the blueprint with him when the parties went to look at the land, and used it in their attempted location. It was delivered to the purchasers when the deal was closed. The purchasers never talked to the agent about a survey, but the agent informed them that the owners would not pay for one. During the negotiations, which extended from February to May of 1927, appellants were represented by their attorney, but he never went to see the land until after the deal was closed. A year and a half afterwards it was first discovered by the parties that the land described in the deed was about a half mile east of the plot which was shown to the purchasers by the agent, and was of much less value. That a serious mistake was made in the location of the land sold can not be doubted, and that it was unintentional on the part of the agent, and without the knowledge of the grantors so far as the record discloses, is no less certain. No rescission of the purchase was requested, nor was the property tendered back, nor was a refund of the purchase price requested. By the institution of this action appellants elected to retain the property and recover damages. As heretofore stated, the suit was originally instituted against the grantors and their agent, McGarry, but subsequently it was dismissed as to the agent in order to preserve diversity of citizenship.

 The only contested issue is whether the court erred in directing a verdict for defendants. The determination of that issue is based entirely on the narrower issue of the legal liability of appellees for the mistake of their agent in attempting to definitely locate the land. Under the facts disclosed it was conceded that appellants had a choice of two remedies, either rescission in equity or an action at law in tort for deceit. Under the first they could have tendered back the property and recovered from the principals the price paid therefor, upon a show-

ing that the agent committed fraud, or that a mutual mistake was made by the agent and the purchasers. Under that remedy a court of equity would have placed appellants in status quo.

Appellants, however, elected the legal remedy of retaining the property and seeking damages from the principals on account of the deceit of the agent. Appellants had a perfect right to pursue the legal remedy, but recovery could be had against only the party or parties who were personally liable therefor. A principal will not be held personally liable for his agent's deceit unless he has authorized the deceit or participated in it or has knowingly permitted the agent to commit it.

 Appellants contend, however, that the agent here was presumed to have authority to designate the land. That contention under the facts stated can not be sustained. The doctrine of presumed, implied or apparent authority will not operate to hold an innocent principal for the tort of his agent. Freyer v. McCord, 165 Pa. 539, 30 A. 1024; Keefe v. Sholl, 181 Pa. 90, 37 A. 116; Kennedy v. McKay, 43 N. J. Law, 288, 39 Am. Rep. 581; Mayo v. Wahlgreen, 9 Colo. App. 506, 50 P. 40. A broker who merely has property listed to sell at a certain price is not a general but a special agent of limited authority, which limitations the purchaser must ascertain at his peril. The broker has no power to bind his principal beyond the express authority conferred upon him. Harrigan v. Dodge, 216 Mass. 461, 103 N. E. 919; Hodson v. Wells & Dickey Co., 31 N. D. 395, 154 N. W. 193, L. R. A. 1917F, 958. See, also, 27 R. C. L. 396 (Vendor and Purchaser), § 101.

Whatever might be said concerning the apparent authority of a real estate broker to point out a clearly defined parcel of real estate, such as a house and lot, is beside the question now presented. Here the land, though plotted of record, was a part of a wild, uncultivated, and unoccupied tract which appellees had never seen and could not physically designate, of which facts appellants had knowledge. The only information appellees had of its location was the blueprint, which they delivered to their agent who, in turn, delivered it to appellants. It correctly disclosed the precise location of the lots. From it, the agent in the presence of appellants, attempted to locate the land by means of measurement with an automobile speedometer, aided by information previously acquired by the agent from the re-

corded plot in the office of the city engineer at Hammond, which subsequently proved to have been incorrectly obtained by the agent. Appellants knew the character of this land, and the difficulty of precisely locating it with the naked eye. They had access to the only means of identification which the sellers had, and they had all the information concerning its precise location that the sellers ever possessed. Furthermore, the official plot of the entire addition, including the sub-divisions, was on file in the office of the engineer of the city in which appellants resided, and yet they made no effort to verify the alleged statements of the agent, nor did they inquire further as to the exact location, but they chose to rely upon the agent's statement as to the location, which the undisputed evidence discloses was ascertained in a very crude and uncertain manner, and within the knowledge of appellants.

Several conferences were had in the office of appellants' attorney prior to receiving from the Chicago Title & Trust Company its letter of opinion as to the sellers' title, and before the deed was made. At one of those conferences appellants' attorney asked the agent if he could show him (the attorney) where the property was, to which the agent replied: "I told him to the best of my ability I would, and the question came up in his office about the owners showing me the property. I told Mr. Sevald (the attorney) that the owners had never been out so they didn't really know where the property lay."

Under these circumstances we think the agent was not authorized by his principals to locate the land in question for appellants, and that the appellants had no right to rely upon his statements in that respect. It is true there are cases which have held that the designation of location of real estate to a purchaser was within the scope of the agent's authority, but those rulings were not under any such state of facts as are present here. Even though such authority of a real estate agent be presumed as a general principle, that presumption may be rebutted and dissipated by the facts, and we think that has been done in this case. We accept as true all of appellants' statements on all controverted questions of fact, and yet we think the evidence falls far short of establishing the fact, by presumption or otherwise, that appellees authorized the deceit, or participated in it, or knowingly permitted the agent to commit it.

Judgment affirmed.