## McVEIGH v. McGURREN.

### No. 7308.

Circuit Court of Appeals, Seventh Circuit.

Dec. 27, 1940.

Rehearing Denied March 3, 1941.

Thomas Dodd Healy, of Chicago, Ill., for appellee.

Charles H. Soelke, Alexander Koehn, and Joseph P. Loewy, all of Chicago, Ill., for appellant.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

The plaintiff, Gladys McVeigh, brought suit in her own proper person and as guardian of the persons and estates of Thomas McConnell and Charles Dewey McConnell, minors, her children, to recover special and general damages suffered in her own behalf and as the mother of the two children and occasioned by false and fraudulent representations made by defendant, in reliance upon which, as plaintiff alleged, she, on March 18, 1935, executed a release, wherein she discharged her former husband Thomas F. McConnell from any and all sums due or accruing to her either for her own support or that of her children under a property agreement settlement made by Thomas F. McConnell and herself as husband and wife at the time of their divorce on April 23, 1928. The jury returned a verdict for $4,000 in favor of plaintiff in her own right and $8,500 in her favor as guardian, and the court entered judgment in favor of plaintiff in her own proper person and as guardian of the two minors, for $12,500.

Inasmuch as defendant insists that the evidence did not sustain the verdict, it becomes essential to examine the record. Plaintiff's evidence tends to support the following facts: Plaintiff was married to Thomas F. McConnell on November 27, 1920. Their son Thomas was born August 4, 1921 and Charles on August 17, 1923. An interlocutory decree of divorce was granted plaintiff on March 20, 1928 and, at the same time, the parties filed in the divorce proceedings in Los Angeles a property settlement agreement, which provided that McConnell should pay plaintiff $150 per month for her own support until she should remarry and $100 per month for the support of the two boys until they should become of age. The decree of divorce became final May 6, 1929. Plaintiff married one Blake McVeigh in March, 1933, and shortly thereafter, divorced him.

Plaintiff received from McConnell irregular payments before entry of the final decree of divorce. Her total receipts were approximately $800 and credit was reflected therefor in affidavits filed in court at Los Angeles. Other transactions between the parties occurred resulting in credits for $3,554.12. Plaintiff made repeated efforts in the divorce proceedings from 1929 until 1934 to collect from McConnell, crediting him for such small sums as he paid. He had remarried in Houston, Texas, in June, 1929, and become the head of another family. Plaintiff sought by criminal proceedings to force McConnell to support the two children without avail. McConnell was in a precarious financial condition all of this time until March, 1935. He was then on relief and, upon his inheritance of some $20,000 from the estate of John Grace, deceased, the probate court made him an allowance in that estate of $100 per month to enable him to get off the relief rolls.

On March 6, 1935, McConnell received distribution of his legacy. Two days later defendant, who was McConnell's attorney, went to Los Angeles, as he said, "to secure a release of the property settlement agreement which had been made at the time of the divorce." Defendant was also executor of the Grace estate and knew what McConnell was receiving therefrom.

The facts thus far related seem undisputed. The real factual controversy is as to the actual occurrences in Los Angeles when defendant arrived there. Plaintiff and her then attorney testified that defendant said that McConnell was without financial means to meet his obligations for her own or the children's support; that he had borrowed $1,250 to effect a settlement. Plaintiff testified that she went to see defendant at his hotel, in response to his telegram, where he told her that he desired recall of an outstanding criminal warrant for nonsupport, so that McConnell could go back to work. She told him that approximately $18,000 was then due on the agreement and defendant replied that if she was planning to get any such sum, she might as well forget it, as McConnell did not have any money but was "broke." She responded that she had known of McConnell's earning as much as $600 a month and said that her son Thomas needed eye treatment in a cooler climate. Defendant replied that McConnell had borrowed about $1,000, which he was prepared to pay her, and that he could get a position in Chicago if the warrant was recalled. Defendant finally offered plaintiff $1,250 to sign the release. He said that this money was borrowed from a friend of McConnell's. Plaintiff's then attorney testified that defendant told him that McConnell was "broke" and that when he, the attorney, asked defendant whether McConnell's mother had put up the money for the settlement, defendant replied that the money was "advanced by a friend."

We shall not go into greater detail as to the occurrences at the time of the meeting in Los Angeles. Suffice it to say that what we have related as to the testimony of plaintiff and her attorney, if believed by the jury, constituted clearly a case of fraud and deceit upon which plaintiff testified she relied and in pursuance of which reliance, she executed the release of indebtedness.

▮▮ Defendant denies making any of the representations, insists that he did not advise plaintiff that McConnell was insolvent and asserts that he acted in the best of good faith, and he is corroborated somewhat, perhaps, by the testimony of other persons present at the conference in the prosecuting attorney's office in Los Angeles. But the most that can be said of his position is that the crucial question, that is, the existence or non-existence of the affirmative misrepresentations of fact, inducing the execution of the release, was to be decided by the jury upon consideration of the evidence presented. Obviously neither the District Court nor this court of review can substitute itself for the jury and assert that substantial evidence offered is not to be believed. We can only examine the record to determine whether there was sufficient evidence to support the verdict. The record being clear in that respect, it is beyond the proper scope of our authority to disturb it. Lynch Enterprise Finance Corp. v. Dulion, 5 Cir., 45 F.2d 6, 10; Kansas City Southern Railway v. Martin, 5 Cir., 262 F. 241; Southern Ry. v. Clark, 6 Cir., 233 F. 900.

▮ That the evidence offered by plaintiff, if believed by the jury, was sufficient to sustain the verdict appears from well recognized rules governing actions to recover for fraud and deceit. We find present each of the essential elements, namely, material false representations, knowledge by defendant of falsity, absence of knowledge of the same by plaintiff, reliance upon the representations by plaintiff, and finally, injury to plaintiff. There being evidence of each of these elements there was support for the cause of action framed in the complaint. Chanin v. Chev-

rolet Motor Co., 7 Cir., 89 F.2d 889, 891, 111 A.L.R. 1235; Equitable Life Ins. Co. v. Halsey, Stuart & Co., 7 Cir., 112 F.2d 302, 308; Johnston v. Shockey, 335 Ill. 363, 167 N.E. 54; Prentice v. Crane, 234 Ill. 302, 84 N.E. 916; In re Syracuse Gardens Co., D.C., 231 F. 284, 291; Boatsmen's Nat. Co. v. Elkins & Co., 8 Cir., 63 F.2d 214.

■ Defendant insists that plaintiff has failed to establish the amount if any due her either in her own right or as guardian for her children. The court instructed the jury that the measure of damages in a cause of this character is the difference between the fair and reasonable value, at the time and place in question, of the claim or right surrendered and canceled by plaintiff under the terms of the release and the amount actually paid her at the time of the execution of such release. The parties agree that the instruction was correct. In order to determine the fair value of the claim, it was necessary that the jury be advised, first, as to the amount due upon the contract for support and, second, as to the reasonable and proper amount that could have been recovered thereon against McConnell if the release had not been executed and plaintiff had sought to enforce her remedy against him. The evidence discloses that there was due plaintiff for money for herself and her children approximately $24,000. The jury knew that McConnell had an estate of some $20,000. The jury returned a verdict of approximately one-half of the amount of the claim. We see nothing inconsistent in the verdict and the evidence submitted. Indeed, the amount seems a reasonable allowance, made in pursuance of the court's instruction.

■ Defendant questions the propriety of recovery by plaintiff for sums due for support of the children. In this respect it is well to remember that plaintiff sued in her own right and also as guardian. She had been appointed by the probate court and was duly qualified to act in the official capacity mentioned. Section 159 of Chapter 3 of Deering's Civil Code of California, reads as follows: "A husband and wife cannot, by any contract with each other, alter their legal relations, except as to property, and except that they may agree, in writing, to an immediate separation, and may make provision for the support of either of them and of their children during such separation." ·

Defendant argues that the agreement was merged in the decree of the divorce so that when plaintiff executed a release, she in fact, surrendered little or nothing because McConnell was still obliged to support the children. The contract created, however, the direct obligation of McConnell to pay the sums of money therein mentioned and the release, when executed, released and relieved him from any and all obligations then existing or accruing in the future arising out of the agreement "whether for her support or for the support of the minor children of the parties hereto." The contract was expressly canceled in so far as "it provided for the payment of any sums for the support of the party of the first part" and of the children of the parties. Under the provisions of Section 159, the approval of the agreement by the divorce court created an obligation upon McConnell for the use and benefit of his children in which they had a definite legal interest. The contract having been made for their benefit, under well recognized rules, they had the right to sue thereon. Crater v. Crater, 135 Cal. 633, 67 P. 1049; Lewis v. Lewis, 174 Cal. 366, 163 P. 42; Merritt v. Merritt, 106 Cal.App. 234, 289 P. 240; Pilson v. Salvoni, 65 App.D.C. 55, 79 F.2d 411.

■ Nor does it matter that plaintiff was appointed guardian subsequent to the execution of the release. She made a contract with McConnell for the children's benefit. Upon this she might sue or the children in their own right might sue. Being minors, the cause of action existing in them, upon her appointment as guardian, passed to her and was lodged in her as guardian.

Defendant complains of the action of the court in striking from his answer all references to an adjudication of the Superior Court of Cook County, Illinois, wherein plaintiff's claim for moneys due for the support of her children against the estate of McConnell was allowed in the amount of $8,000 in a suit in equity in the Superior Court brought by plaintiff against that estate. This judgment was pleaded as an adjudication that no false and fraudulent representation was made. An appeal from that judgment is pending in the Appellate Court of Illinois.

■ Defendant was not a party to the suit. Despite this fact, defendant insists that the allowance of the claim for the chil-

dren for $8,000 and the finding that no false or fraudulent representations were made to plaintiff by McConnell or his representatives to secure the release and adjudging that she had released McConnell from any claims due her created an estoppel to maintain this suit. The decree discloses that as to the children the release was held ineffective. The court evidently intended to do fireside justice and allowed the children's claim for $8,000. But the rule of res adjudicata has no pertinence to the suit here involved. There must be identity of parties or privies. Litchfield v. Goodnow, 123 U.S. 549, 8 S.Ct. 210, 31 L. Ed. 199; Bigelow v. Old Dominion Copper Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009, Ann.Cas.1913E, 875. The essence of estoppel by judgment is that some like question or fact in dispute has been judicially determined by a court of competent jurisdiction between the same parties or their privies. Inhabitants of Sturbridge v. Franklin, 160 Mass. 149, 35 N.E. 669. The controversy between the parties in the present instance arises from confusion of the rules governing actions against principal and agent. The general premise is that a judgment against the principal is not binding or conclusive on an agent who is not a party to the action. If the asserted liability grows out of the alleged wrongful act of the agent alone and the agent is discharged in an action charging him, it follows that the principal must likewise be discharged, but the situation is quite different when the action is against a principal who is discharged and it is then asserted that the judgment discharges the agent. In 1 Freeman on Judgments, 5th Ed., par. 469, page 1029, the author says:

"Such a position is obviously untenable and contrary not only to the principles already stated in this section but opposed to the rule that a judgment in favor of one joint tort feasor is not a bar to an action against another, at least when he has no right to indemnity and also violates the principle of mutuality, since a judgment against the principal would not in such case bind the agent or servant."

■■■■■ We agree that inasmuch as defendant was not a party and as the only question decided was that as to his principal's liability, defendant's averments were wholly beyond any scope of the doctrine of res adjudicata. Cragin & Co. v. International S. S. Co., 2 Cir., 15 F.2d 263; Old

Dominion Copper Co. v. Bigelow, 203 Mass. 159, 206, 89 N.E. 193, 40 L.R.A.,N.S., 314; Keokuk & W. R. R. Co. v. Missouri, 152 U.S. 301, 14 S.Ct. 592, 38 L.Ed. 450; Crescent City Co. v. Butchers' Union, 120 U.S. 141, 156, 7 S.Ct. 472, 30 L.Ed. 614; Thornton v. Columbus Gas Co., 18 Ohio N. P.,N.S., 158, 160; Carey v. Conn, 107 Ohio St. 113, 140 N.E. 643; Myers' Adm. v. Brown, 250 Ky. 64, 61 S.W.2d 1052; McFaddin, etc., Co. v. Texas Rice Land Co., Tex.Civ.App., 253 S.W. 916, 917; Sutter v. Kansas City, 138 Mo.App. 105, 119 S.W. 1084. As we said in Janeczko v. Manheimer, 7 Cir., 77 F.2d 205, 207: "A principal will not be held personally liable for his agent's deceit unless he has authorized the deceit or participated in it or has knowingly permitted the agent to commit it." Mechem on Agency, Vol. 1, p. 1458. No one can give to another any lawful authority to practice wilful fraud upon a third person. An agent, therefore, who intentionally defrauds a third person is personally liable for the injury he inflicts. The principal may or may not be liable also accordingly as he may or may not be deemed to have approved or participated in the wrongful acts. Consequently the judgment in favor of McConnell's estate is no bar to the action against defendant. Nor is the latter discharged upon the ground that McConnell and defendant were tort feasors. Bigelow v. Old Dominion Copper Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009, Ann.Cas.1913 E, 875.

■■■■■ Defendant complains because the court struck from his answer the averments concerning written objections filed by the administratrix of the McConnell estate to plaintiff's claim in the probate court in Cook County, where the claim was denied. Defendant asserted materiality of the objections upon the ground they disclosed that plaintiff failed to establish in the probate court that the amounts claimed by her were due her. The District Court rightfully recognized these as self-serving statements and not binding upon plaintiff. The claim was offered in evidence by plaintiff for the purpose of showing that it covered all money due both for plaintiff's support and for that of her children. It was offered for no other purpose. The averments tendered evidence clearly hearsay in character and in no way competent or admissible. Only so much of the record as showed that the claim had been filed and the result thereof could be proper evidence.

Nor were the proceedings in the probate court any defense to the present action. Inasmuch as that court had no jurisdiction in equity, plaintiff was without remedy there to attack the validity of the release pleaded in bar of her claim.

Defendant insists that the court erred in denying his motion for a directed verdict on the ground that the children were not injured by the release for the reason that the mother had no authority to release their rights; that as guardian she could not release the claims and that all rights under the agreement were merged in the decree of divorce, any discharge of which, to be effective would require approval, by the court.

Both parties have heretofore contended at various stages that the release was invalid. This question of legality, however, seems wholly immaterial. One is not permitted to benefit from his own fraud. Here plaintiff, relying upon the fraud, accepted a nominal settlement. Defendant thereupon interposed the resulting release as a bar to the claim in the probate court. Whether that instrument was valid or not, defendant, according to the averments of the complaint and the evidence of plaintiff, interposed its existence as a bar to the claim filed in the probate court, wherein the court was asked to allow the money due plaintiff in her own right and as guardian for her children as provided in the property settlement. If the jury believed these facts, then, irrespective of validity, a case of fraud was made out. If defendant by misrepresentation secured release of an obligation amounting to approximately $20,000 upon paying $1,250 and, following and pursuing such fraud, interposed it in bar not only of plaintiff's but also of her children's rights, if he at the time knew it was illegal as he now claims, his fraud was carried to fruition by his insistence upon the validity of something which he knew to be invalid in a court where the fraud inducing the release could not be raised. No tort feasor may defend his own fraud by his own wrong doing. Lindley v. Kemp, 38 Ind. App. 355, 76 N.E. 798; Tate v. Watts, 42 Ill.App. 103.

Defendant complains of the refusal of the court to admit in evidence a letter from one of the minors, Tommy, addressed to McConnell's second wife. Irrespective of whether the exhibit was in fact offered in evidence, which is doubtful, there is no ground upon which it could properly have been admitted. It was undated; it expressed the gratitude of a young boy to his father's second wife, after his father's death. It related in no way to plaintiff's cause of action, or to defendant's defense.

The court excluded evidence of McConnell's alleged poverty in 1934, prior to the receipt of the Grace legacy in 1935. Defendant offered to prove that McConnell was on relief in Illinois until he received the allowance from the Grace estate in July, 1934, and insists that it was error to refuse such evidence. But the witness who was produced had worked for the relief authorities only since 1937, three years after the period during which it was sought to prove that McConnell was on relief. He was tendered to show when McConnell went on relief. Obviously his testimony would have been hearsay. In the same connection, defendant examined Mrs. McConnell, second wife, as to the nature of McConnell's business and work when she married him. The testimony was excluded, but there was no offer of proof as to what she might have testified to. Defendant also questioned one Ruth McConnell apparently in an effort to describe the conditions of the apartment in which McConnell lived on Sheridan Road. The evidence was objected to and defendant did not disclose in any way what he expected to prove. Obviously the excluded testimony of all these witnesses was objectionable. The first witness' knowledge was clearly hearsay. As to the other two witnesses, the court was utterly without knowledge of what was expected to be proved. In order to secure review of a ruling excluding evidence, an offer of proof is essential, so that the court may know the relevancy and materiality of such testimony. Herencia v. Guzman, 219 U.S. 44, 46, 31 S.Ct. 135, 55 L.Ed. 81; New York Ins. Co. v. Doerksen, 10 Cir., 75 F.2d 96, 101; Kline v. Blackwell, 5 Cir., 63 F. 2d 897, 899.

Furthermore there was no pertinence or relevancy in any of the offered testimony. How McConnell was living in 1934 could in no wise constitute a defense to the charge of fraud. It might have been wiser for plaintiff to have permitted the testimony to be produced, in order to show that McConnell was prior to his inheritance in fact in poverty, and thus corroborate the contention that plaintiff believed when she signed the release defendant was still in poverty. But, irrespective of this comment, the testimony was clearly irrelevant.

In addition to this, proof of poverty appeared elsewhere in the record and the evidence excluded could have been only cumulative, the exclusion of which was harmless error. Ingram-Day Co. v. Schultz, 7 Cir., 45 F.2d 359, 364; Palace Cafe v. Hartford Fire Ins. Co., 7 Cir., 97 F.2d 766, 770.

Defendant complains of the admission of the testimony of two witnesses as to statements made by defendant. These witnesses testified that defendant approached them in the hallway of the courthouse on May 12, 1937 and said regarding plaintiff that he would see to it personally that she never got a cent. Later, upon motion of defendant, who argued that the evidence constituted an attempt to prove an offer of compromise, the court struck out the testimony on the ground that it was too remote. Defendant's counsel then said "all right, that ends that," made no motion for mistrial and tacitly at least indicated satisfaction with the court's instruction to the jury to disregard all such evidence. Irrespective of the apparent relevancy of the testimony, as bearing upon defendant's attitude, in view of the fact that it was stricken from the record and the jury instructed to disregard it, defendant was in no wise prejudiced.

Defendant complains of instructions ten and eleven. They were not improper as urged but, more than that, defendant made no objection to the charge at the time it was proposed and no modification was suggested to the court. Under rule 51 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the assignment of error fails. Pennsylvania R. R. Co. v. Minds, 250 U.S. 368, 375, 39 S.Ct. 531, 63 L.Ed. 1039; Mobile & M. R. R. Co. v. Jurey, 111 U.S. 584, 596, 4 S.Ct. 566, 28 L.Ed. 527; O'Connor v. Ludlam, 2 Cir., 92 F.2d 50, 54.

Defendant insists that the release was invalid as a matter of law, for the reason that no guardian has a right to surrender the claim of his ward. He argues, therefore, that the fourth instruction was inconsistent with the court's previous rulings on defendant's preliminary motion to dismiss. We have discussed elsewhere the question of immateriality of validity of the release. It need be said now only that the instruction was granted at defendant's request. He may not complain of a charge given at his own suggestion. If the action was prejudicial, having inspired it, he can not now object.

We find no error in the refusal of any other tendered instructions. They bore upon the burden of proof. The court fairly and fully instructed the jury upon this subject matter and the nice gradations attempted to be framed by the defense in the instructions tendered would have only confused the jury. The instructions given properly interpreted the law of fraud and deceit and the burden of proof in actions therefor. Crane v. Schaefer, 140 Ill.App. 647; Endsley v. Johns, 120 Ill. 469, 12 N.E. 247, 60 Am.Rep. 572; Merchants' Bank v. Lyon, 185 Ill. 343, 354, 56 N.E. 1083; Mortimer v. McMullen, 202 Ill. 413, 415, 67 N.E. 20; Miller v. Steele, 6 Cir., 153 F. 714.

The judgment is affirmed.